## STANDARD SAVINGS & LOAN ASSOCIATION v. ACTON.

No. 26388.   Opinion Filed Dec. 15, 1936.

Shirk, Danner & Earnheart, for plaintiff in error.

J. F. Murray, for defendant in error.

PER CURIAM. This action by defendant in error, plaintiff below, sought the cancellation of a mortgage held by plaintiff in error, defendant below, and for judgment quieting title to certain property covered by the mortgage, and decreeing that the defendant have no right, title, claim, or interest in and to said property by virtue of said mortgage.

The grounds for relief sought by plaintiff, as alleged in the petition, are that the plaintiff is the owner of certain real estate in Ponca City; that the defendant holds a mortgage, dated August 9, 1929, executed by the plaintiff, to secure a note in the sum of $3,700, and which is of record; that said mortgage is void for the reason that prior to and at the time of the execution of said mortgage, and at all times since said date, the plaintiff was a married woman, living with her husband and family on the real estate and premises described as their homestead; that said mortgage is a cloud on the title of the plaintiff; and prays for relief as above stated.

To this petition the defendant filed an answer, the material allegations of which are that the defendant loaned the sum of $3,700 to the plaintiff, and that the plaintiff executed and delivered to the defendant her promissory note, in writing, for said sum, and that at the time of the execution and delivery of said note and in order to secure the payment of the same, the plaintiff executed and delivered to the defendant her real estate mortgage, by the terms and conditions of which she mortgaged to the defendant the real estate described in plaintiff's petition; that there had been a default in the payment of said note and mortgage, and that there was due and owing on said mortgage to the defendant the sum of $3,590.88, with interest and attorneys' fees.

The defendant further alleged as follows:

"Nineteenth: This answering defendant further alleges and states that if the mortgage of the defendant as hereinbefore set out is void, which this answering defendant denies, the plaintiff herein and her husband, G. H. Acton, are estopped from claiming that said mortgage is void and of no force and effect, for the reason that the proceeds of said mortgage, over and above that amount paid to the Oklahoma City Building & Loan Association, as aforesaid, were received by the said G. H. Acton and used by the said G. H. Acton in the conduct of his business, and that by reason of the said G. H. Acton receiving said sum of money, the said G. H. Acton and the plaintiff herein

are estopped from claiming, setting up and asserting that the mortgage of the defendant is void and of no force and effect."

"Twentieth: This answering defendant further alleges and states that the plaintiff herein and G. H. Acton received the benefits of said mortgage, and that the said G. H. Acton knowingly received the proceeds of said mortgage over and above that paid to the Oklahoma City Building & Loan Association, and used same in his business, and that by reason of the said G. H. Acton knowingly receiving the proceeds of said mortgage and applying and appropriating same to his own use and benefit, the plaintiff and G. H. Acton are estopped from asserting the invalidity of the mortgage of the defendant hereinabove set out."

The trial court's findings of fact fully sustained the allegations of the petition in the matter of the homestead character of the property. The court found that the plaintiff borrowed the sum of $3,700 and executed the real estate mortgage in question; that at the time the note and mortgage were executed, the defendant paid to plaintiff the sum of $3,700, of which sum the plaintiff at different times subsequent thereto gave to her husband certain portions, aggregating about $1,400, which he received and used in his own business. The court found that at the time the note and mortgage were executed, plaintiff lived upon the property with her husband and minor daughter, and that they had so lived for several years prior thereto and have since continued to live thereon and are living there now as a family; that the defendant knew, or by the exercise of ordinary diligence could have known, that said real estate was the homestead of plaintiff and her husband and minor daughter.

The trial court concluded, as a matter of law, that at the time the note and mortgage were executed, the real estate involved was and had been the homestead of plaintiff, her husband and minor daughter, and has continued down to this date and is now the homestead of said plaintiff and her family; that the mortgage herein involved is void because the plaintiff, Elsie V. Acton, was not joined by her husband in the execution and delivery of said mortgage and the property therein described was at the said time the homestead of plaintiff, Elsie V. Acton; that plaintiff is entitled to have the title to said real estate quieted against said mortgage so long as the same remains the homestead of herself and family. Judgment was accordingly rendered canceling and setting aside said mortgage. The court, upon defendant's cross-petition, rendered personal judgment against plaintiff, Elsie V. Acton,

for the amount of the note, interest, costs and attorneys' fees, the rendition of such personal judgment having been agreed upon by the parties and not involved herein.

Section 2, art. 12, of the Oklahoma Constitution provides:

"The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; provided, nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage."

And section 9661, O. S. 1931, provides:

"No deed, mortgage or other conveyance relating to real estate or any interest therein, other than for a lease for a period not to exceed one year, shall be valid until reduced to writing and subscribed by the grantors; and no deed, mortgage or contract relating to the homestead exempt by law, except a lease for a period not exceeding one year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced or legally separated, except to the extent hereinafter provided."

Defendant contends that the acceptance by plaintiff and her husband of the proceeds of the mortgage, with knowledge of the execution thereof and the source of the funds, creates a ratification or adoption by the husband, thereby defeating this action by the wife. Defendant relies upon section 9434, O. S. 1931, which reads as follows:

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known to the person accepting."

Also section 9668, O. S. 1931, which reads as follows:

"Any person or corporation, having knowingly received and accepted the benefits, or any part thereof, of any conveyance, mortgage or contract relating to real estate shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract or the power or authority to make and execute the same, except on the ground of fraud; but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

It is argued that these sections set up rules of evidence dispensing with the joinder of husband and wife in a mortgage of the homestead. Granting for the moment that they do, we do not believe the facts in this case warrant the application of these statutes. So far as the record discloses, Acton was not present when the mortgage was executed. No one acted or presumed to act for him. He was at no time asked to sign it, nor does his name appear thereon. He did not join in the transaction, either in its inception or at its consummation. He did not seek the loan; he was asked no questions and made no representations concerning it. He was not considered in the transaction. He was in no sense a party to it, either directly or indirectly. Consequently there was nothing for him to ratify; nothing for him to adopt. One cannot ratify or adopt a contract that does not purport, at least remotely, to be in his behalf. The mere fact that Acton's wife on several occasions gave him portions of the proceeds of the loan, the source of which he had full knowledge, which he used in his business, does not, in our opinion, bring it within the scope of sections 9434 and 9668, supra, and the cases where those sections have been applied.

Consider the case of Carlisle v. National Oil & Development Co., 108 Okla. 18, 234 P. 629, cited by defendant, wherein the plaintiff therein, after reaching majority, accepted the benefits of a void oil and gas lease executed by his guardian in his behalf. Or the case of Farm Mortgage Investment Co. v. Cassell, 168 Okla. 312, 32 P. (2d) 736, wherein the plaintiff accepted the benefits of a contract for the sale of real estate made by his agent, invalid because in violation of the statute of frauds. Or Key v. Midland Savings & Loan Co., 145 Okla. 79, 291 P. 573, wherein it was held that if appellant with full knowledge of the facts received and accepted the proceeds of a mortgage, her signature thereon having been forged, she is estopped to deny its validity. Or Campbell v. McGrath, 117 Okla. 126, 245 P. 634, where the owner of real estate withdrew and accepted from the county treasurer the surplus of the purchase price paid as consideration for a tax deed, alleged to be invalid. Or Avey v. Van Voorhis, 42 Okla. 232, 140 P. 615, where a son with full knowledge of the facts accepted his part of the proceeds of the sale of his father's real estate, sold and conveyed by an attorney in fact after the death of his father. Or Bruce v. Cosden Oil & Gas Co., 119 Okla. 28, 246 P. 826, wherein a minor, upon reaching majority, accepted the benefits of an oil and gas lease executed by

her guardian. Or Cosden Oil & Gas Co. v. Hendrickson, 96 Okla. 206, 221 P. 86, wherein a void contract made by a guardian was adopted by a person after reaching majority. Or Galloway v. Loffland, 144 Okla. 176, 289 P. 774, wherein plaintiff, by accepting the benefits, was estopped to assert the invalidity of a receiver's sale. Or Capps v. Hensley, 23 Okla. 311, 100 P. 515, in which case Mr. Justice Dunn distinguishes between the terms ratification and adoption, and holds that a father, who had, without authority, executed on behalf of his minor child a contract for a lease of the land owned by such child, and then who, after the death of the child, and on his inheriting the interest given him by law therein, recognizes the lease and its terms by accepting rents from the lessees under it, succeeds to any rights the child may have had, and adopts the contract the same as she might have done had she lived and accepted such rents upon attaining majority. In all of these cases a sale was had or a contract executed, either primarily or secondarily, in the objecting parties' behalf, which he later by his acts ratified or adopted. The transaction here did not purport to be in Acton's behalf, either primarily or remotely. The mere fact that he subsequently accepted and used in his business some of the money derived by his wife from the loan, cannot, in our opinion, serve to dispense with the necessity of his signature, upon any theory of ratification or adoption.

If Acton had been instrumental in getting this loan, or had made representations with respect to its not being homestead property, or had concealed material facts which it was his duty to disclose, or if what purported to be his signature had been placed upon the mortgage with his knowledge, or had been forged, and he with knowledge of the facts received and accepted the benefits of the transaction, then possibly these sections 9434 and 9668, O. S. 1931, would come into play. But in the absence of any such showing, we must hold that there was not joint consent to this mortgage of the homestead, and that it is invalid.

The case of Brusha v. Board of Education of Oklahoma City, 41 Okla. 595, 139 P. 298, is relied upon. In our opinion, the fact that the transaction there involved arose prior to statehood and our present constitutional and statutory provisions, and the further fact that Mrs. Brusha permitted the school board to take possession of and to construct valuable improvements thereon and to remain in unquestioned ownership and possession for a number of years, and the further fact that the land was conveyed to the school board prior to the issuance of patent to Brusha and before final proof under laws of the United States, which at that time seemed to authorize such sale for school purposes, without joining his wife in the deed, all render the case inapplicable herein.

Carter Oil Co. v. Popp et ux., 70 Okla. 232, 174 P. 747, and the dicta and inferences therein contained are relied upon. In that case the question was whether Mr. and Mrs. Popp authorized the bank to execute an oil and gas lease on property constituting their homestead and of which they were in possession under a contract to purchase from the bank. The court, while apparently recognizing that Mrs. Popp by her acts might be estopped to deny such consent or authorization, held that the evidence was not sufficient to constitute an estoppel. The court, speaking in general terms, said: "She made no representations nor concealed any material facts which it was her duty to disclose, nor did she accept or receive any benefits from the leases." We are unwilling to take this statement of the court as other than a general observation which may or may not state the rule, depending upon the facts and circumstances.

We are convinced that, in the case at bar, in the absence of any showing that Acton participated in this transaction, or that it purported to be in his behalf, his mere acceptance from his wife at various times of a portion of the proceeds of the loan is not sufficient, within itself, to constitute a ratification or adoption, or to raise an estoppel. To hold otherwise would, in our judgment, let down the bars to untold abuse and to practically nullify the letter as well as the spirit and intent of the constitutional inhibition. It would create a dangerous precedent applicable to all homestead conveyances, wholly unwarranted under section 2, art. 12 of the Constitution. If, as this court has held on numerous occasions, a separate conveyance by husband and wife does not meet the requirements of the Constitution (Thomas v. James, 84 Okla. 91, 202 P. 499; Hawkins v. Corbit, 83 Okla, 275, 201 P. 649), we cannot believe that the mere acceptance of benefits under the circumstances appearing in this case will dispense with the necessity of joint signature. Defendant had both actual and constructive knowledge of the homestead character of this property. The record does not disclose that there were any false or fraudulent representations on the part of either Mr

or Mrs. Acton. Defendant was in possession of all the facts at the time the loan was originally made and was not misled by any statements or any acts on the part of the parties involved. This court has heretofore spoken on this subject and has laid down principles which should not be deviated from to meet the exigencies of a situation such as this, into which defendant placed itself by its own carelessness. In Whelan v. Adams, 44 Okla. 696, 145 P. 1158, it was said:

"The controlling question is that of the right of James D. Whelan to execute to P. O. Adams the deed of May 29, 1908. At the time of its execution said James D. Whelan and Mary F. Whelan were husband and wife, and the land attempted to be conveyed, though owned by the former, was the homestead of the family. Section 2, art. 12, of our Constitution provides that the homestead of the family shall not be sold by the owner, if married, without the consent of his or her spouse, given in such manner as may be prescribed by law. At no time did Mary F. Whelan give her consent to the sale attempted to be made to Adams. The question presented does not appear to ever have been passed upon by this court. The opinions in Maloy et ux. v. Wm .Cameron & Co., 29 Okla. 763, 119 P. 587 · Kelly v. Mosby, 34 Okla. 218, 124 P. 984, and Krauss et ux. v. Potts, 38 Okla. 674, 135 P. 362, all involve transfers made or attempted prior to the adoption of our state Constitution. The sale, having been made in direct violation of the express provision of our organic law, was void; hence Adams acquired no rights by reason of his purchase. The constitutional inhibition is plain, unambiguous, and admits of no exceptions which would destroy its obvious design. If the owner be a married man, the consent of the wife, given in such manner as may be prescribed by law, is essential to the valid alienation of the homestead, unless (it may be) the conveyance be made to her. No alienation of the homestead by the husband alone, in whatever way it may be affected, is of any validity: nothing that he can do or suffer to be done can cast a cloud upon the title: it remains absolutely free from all grants and incumbrances, except those mentioned in the Constitution. Morris v. Ward, 5 Kan. 239. Efforts have been made to ingraft exceptions arising out of the supposed necessities of the case, upon similar constitutional provisions or statutory enactments, but in all states save one, so far as we have examined the authorities, they have uniformly failed: for it must be remembered that it is not the homestead of the husband alone, though the title be in his name: it is the homestead of the family, made so by the Constitution."

And in Shannon v. Potter, 83 Okla. 66, 200 P. 860, it was held:

"An attempted conveyance by deed of the homestead of the family by a married man, given without the wife's consent in the manner prescribed by law, is void."

Nor will the fact that Mrs. Acton received benefits under this void mortgage estop her from prosecuting this action for its cancellation. In Freirmurth v. Steigleman, 62 P. 615, the Supreme Court of California says:

"It is contended that the wife is estopped from denying the validity of the mortgage; citing Tartar v. Hall, 3 Cal. 263; Dolbeer v. Livingston (Cal.) 35 P. 328. There is no estoppel here. The mortgage was absolutely void. Plaintiff was not misled, for he had constructive, if not actual, notice of the homestead, and like notice, also, that the mortgage was executed by the wife alone;, and he is presumed to know that the law forbade the making of the mortgage in this manner.

And in 29 C. J. 913, paragraph 314:

"On the principle that estoppel will not supply the want of power, or make valid an act prohibited by express provisions of law, it is held in jurisdictions where a conveyance of a homestead is void without joinder of husband and wife, that the husband is not estopped by a deed, although founded upon a valuable consideration, or a mortgage to the homestead, or by a lease, in which the wife does not join, and the wife is likewise not estopped by a conveyance, lease, or incumbrance of the homestead in which she did not join, and the fact that she was willing to join in the conveyance does not estop her. It has also been held that no estoppel results against the wife from her executing a mortgage or lease of the premises without her husband joining in the execution."

And in 13 Ruling Case Law, 663, par. 120:

"It is the general rule that neither husband nor wife can be estopped from asserting the homestead right as against a grant or mortgage not executed in the mode prescribed by law. In this connection it has been said that the wife cannot, under the statute, relinquish her homestead rights by verbally consenting to the assignment, or estop herself by such consent: whether she knew the deed was a nullity or not, there is nothing she could do or say about it, short of concurring in and signing the same joint instrument with her husband, that could give it any validity. According to these principles, where a man has no power to convey his homestead without joinder by his wife, a failure promptly to move to set aside a deed made by him while she was insane, after her recovery, will not estop either from denying the validity of the conveyance. For like reasons, such an instrument cannot, as a general rule, be ratified so as to give it validity."

In Goldsborough v. Hewitt, 23 Okla. 66, 99 P. 907, this court, in passing upon the conveyance of a homestead without the joinder of husband and wife, says:

"This conveyance was therefore void (citing a number of Kansas decisions). In Chambers v. Cox, supra (23 Kan. 393) Brewer, J., speaking for the court, said: 'The separate deed of a married man to the homestead is void; it does not divest him of title, nor estop him from recovering the land.'"

In Adams v. Gilbert, 72 P. 769, the Supreme Court of Kansas says:

"The deed to Foster was ineffectual at the time of its execution as a muniment of title, the property conveyed then being the homestead and the deed not having received the joint consent of husband and wife. While the marriage relationship continued, and the property was occupied as a homestead, no act of the husband could be efficient to ratify or confirm such deed."

And in Peterson v. Skidmore, 195 P. 600, the Kansas court held:

"A husband is not estopped by accepting a money consideration for a lease, nor by accepting a money rental thereon, from prosecuting an action to cancel the lease where the lessee knew at the time that he took it that the land was the homestead of the owner and his wife, and that the wife had been adjudged insane and was then confined to a state hospital for the insane." And see Withers v. Love (Kan.) 83 P. 204.

In Whitlock v. Gosson (Neb.) 53 N. W. 980, it is said:

"Estoppel will not supply the authority or power, or make valid an act prohibited by express provisions of law. The statute, in effect, declares a conveyance or incumbrance of the family homestead, by the husband alone, void not only as to the wife, but also as to the husband himself. Therefore, neither is estopped from asserting the homestead rights as against the grantor or mortgagee. Such is the view sanctioned by the clear weight of authority and supported by the soundest reason. * * * To hold that such a conveyance could be enforced as against the husband while void as to the wife and children wou'd not only be absurd in the extreme but would be a flagrant usurpation of legislative power."

It is unnecessary to prolong this opinion with the citation of cases upon a proposition that seems to have been so uniformly decided. For the reasons above stated, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Hugh Webster, Paul B. Mason, and H. M. Gray in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Webster and approved by Mr. Mason and Mr. Gray, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, V. C. J., and BAYLESS, BUSBY, CORN, and GIBSON, JJ., concur.