## MARATHON OIL CO. v. WESTERN OIL & DRILLING CO.

Nos. 27445, 26727, Consolidated.
November 15, 1938.

Rehearing Denied May 2, 1939.

in the district court of Oklahoma county against the Marathon Oil Company, a corporation, to quiet the rights and title of plaintiff in and to the northwest quarter of section 6, township 13 north, range 3 west, Indian Meridian, in Oklahoma county, under and by virtue of an oil and gas mining lease executed to plaintiff thereon, and for cancellation of an alleged void oil and gas mining lease executed on said premises to defendant, and for appointment of a receiver.

Upon filing the suit, application was made by plaintiff for a restraining order against the defendant and for temporary and permanent injunction, restraining and enjoining the defendant from interfering with plaintiff in the possession of said leasehold estate. The restraining order was issued and later, upon proper notice and hearing, a receiver was appointed to take charge of and develop the property.

A motion was filed to vacate the order appointing receiver and to discharge receiver. The motion was overruled, and defendant has appealed from that order to this court, in cause herein No. 26727.

The defendant filed a motion to suspend further proceedings in the district court of Oklahoma county on the alleged ground that prior to the filing of said suit an action had been instituted in the District Court of the United States for the Western District of Oklahoma wherein the defendant Marathon Oil Company is plaintiff and Gilbert N. Hathaway, otherwise known as G. N. Hathaway; Oma A. Hathaway as guardian of the person and estate of Gilbert N. Hathaway, an insane and incompetent person; and Oma A. Hathaway, as defendants therein, involving the same subject matter.

Defendant filed its motion to strike portions of plaintiff's petition.

Motion to suspend proceedings and the motion to strike were both overruled, and the court entered an order approving a contract between plaintiff and defendant relative to development and operation of the property involved, in lieu of such development and operation by a receiver.

R. C. Gwilliam, A. G. Cochran, and Miley, Hoffman, Williams, France & Johnson, for plaintiff in error.

Twyford & Smith and Hoyt & Stephens, for defendant in error.

DAVISON, J. The Western Oil & Drilling Company, a corporation, filed an action Defendant filed its answer setting forth its rights under the oil and gas lease upon the property named in plaintiff's petition.

Upon hearing had, the court rendered judgment in favor of the plaintiff, and from which judgment the defendant has appealed. (Case-made No. 27445 in this court.)

By stipulation of the parties hereto, this court has ordered that the two causes be consolidated and that they be briefed and considered together.

Hereinafter the parties will be referred to separately as they appeared in the respective courts.

The facts out of which the dispute over the conflicting oil and gas mining leases arose, involved the question of whether or not the property upon which the leases were executed was or was not a homestead at the time the lease through which defendant Marathon Oil Company claims was executed. A brief statement relative thereto is as follows: Gilbert H. Hathaway became the owner of the northwest quarter of section 6, township 13 north, range 3 west of the Indian Meridian. The land may be also described as lots 3, 4, and 5 and southeast quarter of the northwest quarter of section 6, township 13 north, range 3 west, Oklahoma county, Okla. The deed to Hathaway was dated June 9, 1910.

The land was bought with the combined earnings of Hathaway and his wife, Oma A. Hathaway. The Hathaways lived in Arizona at the time, and in April, 1913, they moved on this land and occupied it as their homestead. They were both telegraph operators, and while living on the farm, Mr. Hathaway worked some in the telegraph office at Edmond, Okla.

While living on the farm, Hathaway deeded the land to his wife, and the deed was recorded. They lived on the land until the latter part of 1917, when they moved to Cleburne, Tex., and the farm was rented out for one year with privilege of renewal for five years. Hathaway worked at Cleburne and Gainesville, Tex., as train dispatcher.

On February 27, 1918, a charge of insanity was filed against Mr. Hathaway in the county court of Oklahoma county, and he was tried and found to be insane and was committed to the hospital at Norman, where he remained several weeks and was discharged. He then moved to Sapulpa and became train dispatcher there, and on February 7, 1919, Hathaway purchased the dwelling he had been renting and lived in same in Sapulpa and was chief dispatcher for the Frisco until February 8, 1926, when his wife again filed charges against him and he was tried and found to be insane and again committed to the hospital at Norman. Oma A. Hathaway, his wife, was appointed guardian of his person and property. On June 4, 1926, Hathaway escaped and went into Texas, and later into Utah, and then to Pocatella, Idaho, where he remained until some time in 1930, when he returned to Oklahoma and remained awhile, and then went to New Mexico for awhile, and then to Ft. Worth, Tex., and engaged in the insurance business. In 1935 he returned to Oklahoma.

During this time, Mrs. Hathaway remained in Sapulpa with an adopted daughter.

On October 9, 1926, Hathaway filed application in the county court to be restored to his sanity and released from guardianship. The application was resisted by his wife, and the court found that he was still insane and was not capable of looking after himself and property.

On March 2, 1927, Oma A. Hathaway executed an oil and gas lease on the country property named herein, located in Oklahoma county, to Wright & Sears. The lease was not joined in by the husband, and was executed while he was out of the State of Oklahoma. During the month of December, while Hathaway was in Idaho, he learned that his wife had executed an oil and gas lease on the Oklahoma county property, and, on December 25, 1929, he had prepared and filed in Oklahoma county an affidavit setting up certain facts relative to the Oklahoma county farm being the homestead of the family and that the Sapulpa property was not the homestead.

The defendant, Marathon Oil Company, holds, by assignment from Wright and Sears, a lease on 125 acres of the lease executed by Mrs. Hathaway and executed after Hathaway had been declared insane and before his competency was restored.

On October 11, 1930, Hathaway again made application to be restored to competency, but the request was not allowed. On appeal, the district court of Creek county, on April 8, 1935, issued an order restoring him to all of his rights in competency.

On October 12, 1929, Mrs. Hathaway executed an affidavit in which she stated in substance that she and her husband established their residence in Sapulpa during the month of February, 1919, and that they purchased the home in Sapulpa where she had resided for about seven years, and that she and her husband mutually agreed to abandon the country property in Oklahoma county as a homestead, and that she was asserting no claim to any homestead right in Oklahoma county.

On April 9, 1935, Oma A. Hathaway and her husband executed a quitclaim deed to the Oklahoma county farm property to B. V. Johnson, who, joining with his wife, made an oil and gas lease to the plaintiff herein, the Western Oil & Drilling Company.

After an extensive hearing, the court found that the land in question became the homestead of the Hathaways and that at no subsequent time was an abandonment of the property by both husband and wife had, with fixed intention never to return, until they conveyed same to B. V. Johnson by deed; that the lease made by the wife alone and without the consent and joinder of her husband at the time he was adjudged insane was void. That the lease made by B. V. Johnson and wife, who held under both the husband and wife, was valid. The lease by Mrs. Hathaway to the defendant, Marathon Oil Company, and assignments thereof were canceled and the appointment of receiver theretofore made was confirmed and approved.

It is contended by defendant that the proceedings in this case should have been stayed until the federal court exhausts its prior jurisdiction of the subject matter.

The trial court overruled defendant's motion to stay proceedings on account of the existence of the suit filed in the federal court. The defendant again raised this question in its answer, filed herein, but the trial court refused to stay proceedings and proceeded with a full hearing in the matter and rendered final judgment concluding the rights of the parties in the suit filed in the district court of Oklahoma county.

It seems to be conceded that defendant's right to abatement of the proceedings, if the parties and subject matter are the same, depended upon whether or not the cause in the federal court was commenced prior to the commencement of the action in the district court of Oklahoma county, and incidentally if the right to contend for abatement was waived by the defendant.

The record shows that extensive testimony was heard relative to which action was first filed. This contention presented an issue of fact to be determined by the trial court. The court held against the defendant.

Furthermore, in its petition, the plaintiff claims to be the owner of the oil and gas lease covering the premises. In the response of the defendant filed to the application for temporary injunction and ap-

plication for appointment of a receiver. the defendant denied that plaintiff had any valid claim to the oil and gas mining rights in the property described in the petition. and alleged the defendant to be the owner of a valid and subsisting oil and gas lease covering the same property. We think this was sufficient to raise an issue before the court.

The record further discloses that defendant filed its motion to require the plaintiff to make its petition more definite and certain. The defendant filed a motion to vacate the order of the court appointing a receiver and later filed a motion to strike certain paragraphs of plaintiff's petition. All of these transactions were had prior to the filing of a motion to suspend proceedings on acount of the alleged pendency of prior proceedings existing in the United States District Court for the Western District Court of Oklahoma. The district court of Oklahoma county had already taken jurisdiction, a restraining order had been issued against the defendant, and a receiver had been appointed.

It cannot be questioned that this is a case in which the district court of Oklahoma county can take jurisdiction and decide all of the issues raised herein, and while it is true that defendant by these various proceedings did not voluntarily submit to and invoke the jurisdiction of the court on the merits of the case proper, or object to the jurisdiction of the court, we think it did by these proceedings so submit itself to the jurisdiction of the court as to waive the right to submit a motion to suspend proceedings because of an alleged prior proceeding in the United States court.

We quote from Corpus Juris. vol. 1, p. 42, as follows:

"As we have seen, jurisdiction of the subject matter cannot be conferred upon the court by consent or waiver. But the objection to jurisdiction of the person and other objections to jurisdiction going merely in abatement may be waived, and as a rule they are waived. and cannot be afterward urged in any mode if defendant, without properly raising the objection, appears generally, proceeds to trial, makes a motion. or does any other act which constitutes an implied admission of jurisdiction or a general appearance."

See. also, Corpus Juris, vol. 1, p. 37, section 2.

There is no conflict of jurisdiction existing between the two courts further than

the fact that the district court of Oklahoma county has already taken custody of the property under its process.

In Freeman v. Howe, 24 How. 450, 16 L. Ed. 749, that court held:

"In the case of conflicting authorities under a state and federal process, on which property has been seized, the question as to which authority shall for the time prevail, does not depend upon the rights of the respective parties to the property seized, but upon the question, which jurisdiction had first attached by the seizure and custody of the property under its process."

In Texas v. Palmer, 158 Fed. 705, that court held:

"Where the relief in aid of which the appointment of a receiver is sought is such as cannot be obtained except by an actual seizure of the property, as the enforcement of a lien thereon, the actual seizure is not necessary to give the court jurisdiction over the property to the exclusion of all other courts, but an order appointing the receiver is an assumption of possession by the court equivalent to an actual seizure."

In Lion Bonding & Surety Co. v. Karatz, 262 U. S. 77, 67 L. Ed. 871, 43 S. Ct. 480, that court said:

"The court which first acquired jurisdiction through possession of the property is vested, while it holds possession, with the power to hear and determine all controversies relating thereto. It has the right, while continuing to exercise its prior jurisdiction, to determine for itself how far it will permit any other court to interfere with such possession and jurisdiction." Citing Palmer v. Texas, 212 U. S. 118. 53 L. Ed. 435, 29 S. Ct. 230.

We have given due consideration to the evidence introduced on this contention, and this court cannot say that the finding of the trial court thereon was clearly against the weight of the evidence in holding that the suit in the district court of Oklahoma county. No. 86623, was filed prior to the action in equity in the District Court of the United States for the Western District of Oklahoma, being case No. 1716 in said court.

The defendant contends the court erred in refusing to discharge the receiver.

It is true that the contract entered into between the plaintiff and defendant and approved by the court provided for the development and operation of the property and the disposition of the proceeds in lieu of a receiver, pending final determination of all litigation affecting same.

This agreement is in the nature of a working agreement, and by its terms it is specifically provided that it shall in no way affect the validity or propriety of the orders or proceedings heretofore made by either court or waive any rights of the parties. This court is not prepared to say that there is no further need for the receiver.

The appointment of a receiver pendente lite is to a great extent addressed to the sound discretion of the court to which the application is made, to be governed by the consideration of the entire circumstances of the case, and unless such appointment shows an abuse of discretion, the action of the court will not be reversed on appeal. Moran v. Park, 93 Okla. 201, 220 P. 589; Willard Oil Co. v. Riley, 29 Okla. 19, 115 P. 1103; Rector v. United States, 20 F.2d 845. We will have to assume that the trial court's action in retaining the receiver would be governed by the same rule. The record shows that on account of the defendant, Marathon Oil Company, having exercised its election not to drill other and further wells under the said contract, the property was subjected to loss by drainage from wells adjacent to the property, and the court entered its order requiring the receiver to proceed with plans for further development of the lease. We cannot say that the court committed error in retaining the receiver.

Defendant contends that the court committed error in not finding that additional parties were necessary to a complete determination of the rights of all persons interested in the subject matter of the action and in not ordering other parties brought in on defendant's motion.

To determine this question properly, we must first determine what is the subject matter and who are the parties of interest therein.

The plaintiff brought this action alleging that it owned a valid lease on certain lands described in the petition, and further alleged that the defendant, Marathon Oil Company, claims some right, title, or interest in the same. There are only two necessary parties of interest shown in the petition. The fact that various parties may have an interest in the one-eighth of the royalty of the lessor is immaterial and does not make them necessary parties in the determination of the real question raised by the pleadings, which is, Which one of the oil companies held a valid lease on the 125 acres in question? Both leases

provide for one-eighth royalty. The right of royalty owners cannot extend beyond the source from which it is derived. It is the lease that is in question, and if the lease is held to be valid by the court, the rights of royalty owners are not affected. If the lease is held to be invalid, the lesser interests fail with the greater out of which they were derived.

Section 151, O. S. 1931, provides:

"All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this article."

Section 157, O. S. 1931, provides:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

What is the subject of the action here? It is the oil and gas lease and the relief demanded is the cancellation of the alleged void lease.

In Enid Oil & Pipe Line Co. v. Champlin, 113 Okla. 170, 240 P. 649, this court held:

"A third party cannot be brought into an action as defendant on motion of the main defendant where the issues in the original suit are foreign to any issues between him and his codefendant, and the court cannot, over his objection, require him to litigate a controversy between himself and codefendant, which controversy is not germane to the issues in the original action. * * *

"Before additional parties may be brought in, under sections 219 and 224, C. O. S. 1921, it must clearly appear that they have or claim some interest in the controversy adverse to the plaintiff or are essential to a complete determination or settlement of the questions involved, and in the absence of such showing, it is error to require such additional parties to come in."

To the same effect is State Nat. Bank v. Central Nat. Bank, 146 Okla. 142, 293 P. 1007.

In determining the controversy between the parties over the lease, no prejudice whatever was done to any of the royalty holders.

Section 591, O. S. 1931, provides in part:

"An action may be brought by any person in possession, by himself or tenant, of real property against any person who claims an estate or interest therein adverse to him for the purpose of determining such adverse estate or interest. * * *"

The party here who claims an estate or interest adverse to the plaintiff is the defendant, Marathon Oil Company, and not the one-eighth royalty owners in either lease.

The defendant has cited Gypsy Oil Co. v. Marsh, 121 Okla. 135, 248 P. 329, in support of its contention, but we find nothing therein which applies to the facts presented here. The court held in that case:

"In a suit in equity between conflicting lessees to determine the validity and priority of oil and gas leases executed by a common landowner, such owner is not an indispensable party, where his title is not drawn into question, and where his interests are not, and cannot be affected, even indirectly, by the decree, and where it is not shown that either party is entitled to any relief as against him."

And said:

"His title to the land is not drawn into question. By the terms of the respective leases he is to receive the same rents and royalties. It is, so far as the record discloses, immaterial to him which of the lessors develop his property. It is not shown what relief, if any, either party is entitled to as against him, or in what manner either party is or could be affected by his absence."

We think the authorities cited and considered by the court in Gypsy Oil Co. v. Marsh, supra, have very well distinguished the authorities cited here by defendant from the facts and issues presented in the instant case, wherein there is no conflict between the interest of the landowners and the contending lessees. Furthermore, if the instant case filed in the district court of Oklahoma county is so identical with the case filed in the federal court, with reference to parties and subject matter, as to justify this court in suspending proceedings on any account until the federal court acted in the matter, as asked for by defendant, then certainly the royalty interest holders should have been made parties in that suit also, but the record shows they were not made parties.

We think this contention is entirely without merit, and that the court committed no error in finding that additional parties were unnecessary.

It is next contended that no part of the lands owned by the Hathaways, consisting of 165.10 acres on which they lived and established their home for a number of

years, was ever established or designated as their 160-acre homestead. It is contended that the homestead claimant has the burden of establishing that homestead character has been impressed upon the land.

As a general proposition the contention would be correct, and the authorities cited in support thereof would be controlling. The parcel of land owned and occupied by the Hathaways is described in their deed to B. V. Johnson as lots 3, 4, and 5 and southeast quarter of the northwest quarter of section 6, township 13 north, range 3 west of the Indian Meridian, containing 165.10 acres more or less. It is generally known that sections of land in Oklahoma, known as correction sections on the government survey on the north and west sides of townships, frequently contain a fraction more or less than the regular marginal subdivision. This makes a quarter section of land contain more or less than 160 acres. These marginal subdivisions are designated as "lots." The land owned by the Hathaways contained lots 3, 4, and 5. When Hathaway conveyed this land to his wife he described it as the "Northwest Quarter." A quarter section of land is generally considered to contain 160 acres, which may be impressed with the homestead rights.

The particular land upon which the leases in controversy were executed contains approximately 125 acres. This land contained the home and all improvements. That much of the 165.10 acres, without question, was impressed with the homestead character regardless of whether the 160-acre homestead was definitely set apart. Elliot v. Bond, 72 Okla. 3, 176 P. 242. The Hathaways never designated the particular 160 acres, neither did the lessee under whom the defendant claims, nor did the defendant ever request that the homestead be defined. To say that none of a person's land has been impressed with the homestead right when he has but one parcel composing a quarter section would be to overthrow a rule of property long existing and would upset titles throughout the state and deprive many people of their constitutional and statutory rights.

The authorities cited by defendant are not controlling in the instant case. There is not involved here two or more parcels of land any one of which could be designated as a homestead. Neither is it denied that some part of the land was really occupied as a homestead. The court held that the land upon which the leases in controversy were executed was impressed with the homestead character, and we think the holding is correct.

The defendant contends that a conveyance by the owner, without the joinder of the spouse, of lands including the homestead is valid as to the part not the homestead.

The trial court held that the 125 acres of the land owned by the Hathaways and on which the two oil and gas leases in controversy were executed, was impressed with the homestead character. We have confirmed that holding. There was no request on part of the defendant to have the lease under which he claims confirmed by the court as to the fractional part of the land in excess of the 160 acres, and neither was there any pleading or issue raised at the hearing of the cause that would have justified the court in such finding. We think the contention is without merit.

It is contended that all homestead rights in the 165.10 acres of land or any part thereof were abandoned by both Mrs. Hathaway and her husband prior to the temporary insanity of Mr. Hathaway in 1926 and the appointment of his guardian.

Upon this question there was much controversy in the hearing of the case and hundreds of pages of testimony, including depositions and documentary evidence, presented. We cannot discuss here the various facts and incidents presented by the contending parties upon which they relied in support of their contention relative to the abandonment of the homestead. These facts have already been fairly well stated herein.

The impressing of homestead character on land, as well as the abandonment of a homestead after that character has been so impressed, are both questions of fact to be determined by the court or jury from the circumstances surrounding the particular transaction.

In Lane v. Amis Brothers, 171 Okla. 593, 43 P.2d 73, this court held:

"When a homestead character once attaches to land, it continues to be the homestead until the owner voluntarily changes its character, by disposing of the property, or by leaving with the intention, or forming such an intention after leaving, of not returning and occupying it as a homestead. Temporary absence from a homestead does not constitute an abandonment thereof, where there exists a definite and fixed in-

tention to return. Acquiring the title to premises, occupied as a domicile by the owner of the homestead and his family, in a nearby town. does not amount to such a permanent absence from the homestead as to work an abandonment thereof, so long as the intention to return to the homestead exists."

It is a well-established principle of law in this state that the benefits of a homestead exemption provided by the Constitution and the statutes of this state are not reserved to the head of the family alone, but to the entire family without regard to whether the husband or the wife is the owner of the title. State National Bank v. Lokey, 112 Okla. 82, 240 P. 101.

Our statute provides that the owner may select a homestead, but makes no provision as to how or when the selection should be made. McDonald v. Miller, 77 Okla. 97, 186 P. 957.

It is not disputed that the lease under which the defendant claims was made by the wife alone. Defendant contends that the homestead was abandoned at the time the lease was made. The record shows that at the time the lease was made, the husband, Gilbert N. Hathaway, was under guardianship and had been adjudged insane, and was out of the state at the time. It is not disputed that the husband knew nothing about the wife making the lease until some time thereafter, and that he then had prepared and filed of record in the county where the land is located an affidavit of protest and notice to the public relative to the same, and declaring the land to be his homestead. This was before the defendant, Marathon Oil Company, took its assignment to the lease in controversy.

The conditions under which Hathaway conveyed the property to his wife. the buying of the property in Sapulpa, Okla., and the occupying the same for several years while the husband was employed there by the Frisco Railroad Company, and the continued use of the same by the wife and adopted daughter while the husband was out of the state, together with other facts, were all presented to the court as matters of fact from which the court was to determine if the particular land on which the leases in controversy were executed was ever impressed with the homestead character and right, and if so, whether or not the homestead rights therein were ever abandoned. The court found both of these questions of fact against the defendant, and this court cannot now say from the record that the judgment of the trial court is clearly against the weight of the evidence.

It is contended that if the lease under which defendant claims was at the time it was executed invalid because not signed by the husband, the lessor, the wife, executed the same at a time when the wife had the right to make a valid lease on the homestead, her husband having then resided out of the state for a period of one year.

There is no testimony which shows that Hathaway voluntarily abandoned his wife and remained out of the state for a period of one year, which would bring his conduct within the provisions of section 9663, O. S. 1931. Hathaway was under guardianship at the time, and having been adjudged insane, this statute could have no application to the facts here presented. The mere taking of rentals by the wife under a void lease or contract relative to a homestead could not validate such an instrument, and would in no way bind the husband. Standard Savings & Loan Association v. Acton, 178 Okla. 400, 63 P.2d 15.

The judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, CORN, and HURST, JJ., concur. GIBSON, J., dissents. WELCH and PHELPS, JJ., absent.