C. G. DAVIS ET AL *v.* JAY JOHNSTON ET AL

5-5751                                              479 S.W. 2d 525

Opinion delivered February 28, 1972

*McKay, Chandler & Choate,* for appellants.

*Keith, Clegg & Eckert,* for appellees.

GEORGE ROSE SMITH, Justice. This appeal raises a question of first impression in Arkansas: In a suit to determine the true ownership of the leasehold interest in lands apparently containing oil and gas, can the chancellor appoint a receiver *pendente lite* and authorize him to contract for the drilling of an oil well upon the property, to keep it from being drained by an existing well upon neighboring property? In the trial court the chancellor appointed such a receiver and authorized it to proceed in the manner indicated.

The facts may be stated in a few sentences. The appellants, claiming to own the entire oil-and-gas leasehold interest in the 80 acres in controversy, brought this suit to cancel rival leases held by the appellees. In response to that complaint the appellees denied the appellants' claim of ownership and asserted title in themselves to the leasehold interest in question.

The appellees further asserted that the 80-acre tract was being drained of its oil and gas by an oil well owned by the appellants upon adjoining land. The chancellor, to end that drainage, appointed KWB Oil Property Management, Inc., as receiver and authorized it to contract for the development of the leasehold interest. The receiver recommended, and the court approved, a contract by which Jay Johnston (one of the appellees) and Weiser-Brown Oil Company agreed to finance the drilling of a well upon the land in return for the payment to them, from the sale of any oil and gas that

might be produced, of 250%, of their drilling expenses. If the well should prove to be a dry hole, Johnston and Weiser-Brown would lose their investment.

We hold that the chancellor's action was authorized by our statute regarding the appointment of receivers *pendente lite,* which reads as follows:

> "In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of plaintiff or of any party whose right to or interest in the property or fund or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured, the court may appoint a receiver to take charge thereof during the pendency of the action, and may order and coerce the delivery of it to him." Ark. Stat. Ann. § 36-112 (Repl. 1962).

In construing a statute we must make every effort to give effect to the legislature's purpose in enacting the law. As Llewellyn put it: "If a statute is to make sense, it must be read in the light of some assumed purpose. A statute merely declaring a rule, with no purpose or objective, is nonsense." The Common Law Tradition, p. 374 (1960).

Needless to say, the appointment of a receiver is not an end in itself. It is a step taken by the court to afford some further judicial relief to the party seeking the receivership. Here the statute itself recites the danger that is to be met by the receiver: ". . . where it is shown that the property or fund is in danger of being lost, removed, or materially injured, the court may appoint a receiver . . ." In the case at bar the property is being materially injured by the drainage of oil through the appellants' nearby well. If the statute does not invest the court and the receiver with the power to meet that condition, the legislative purpose is not being fulfilled.

The right view has been taken elsewhere when the question has arisen. It is impossible to imagine a case more precisely in point than the decision in *Hunt* v. *State*, 48 S. W. 2d 466 (Tex. Civ. App., 1932). There, as here, the land in question was being drained by a neighboring well owned by one of the litigants. There the Texas statute cited by the court, Vernon's Ann. Civ. St. art. 2293 (1) (1971 printing), was in all material respects a verbatim copy of our own statute, quoted above. In sustaining the trial court's appointment of a receiver with authority to develop the property *pendente lite*, the court said:

> While the doctrine of ownership in place obtains in this state, drainage cannot be enjoined, and the value of that ownership depends entirely upon reducing such minerals to possession by bringing them to the surface. No cause of action lies in the owner of the surface against his neighbor for draining the oil and gas from under his land. It is obvious therefore, that the opportunity of the owner of the land to secure production therefrom is largely, if not almost entirely, dependent upon the validity of his title. And the mere fact that the title to the land is in dispute, or in litigation, as here, greatly impedes, if it does not entirely prevent, production of oil and gas on a given tract. And where wells on the adjacent lands are owned and operated by the same parties who claim the land in dispute, as was shown in this case, and are draining the lands in question, a case is presented calling for immediate relief, pending a determination of ownership of the title. Appointment of a receiver to effect such development, and to produce the oil that would otherwise drain into wells on other lands, and so be lost to the owners of the land in controversy, has been approved by the courts as proper and effectual. [Three Texas cases cited.] The fact that wells on adjoining lands were already in operation daily draining the oil and gas shown to belong to the state, from the land in question, which could not be replaced, and removing it beyond possibility of recovery, and that the only practical method of preventing such removal was by the development and

production of such oil and gas under said lands without delay, constituted, we think, such imperative necessity for immediate appointment of a receiver with authority to accomplish that purpose, as sustains the action of the trial court.

A few years later the Supreme Court of Texas pointed out that even without a statute "upon proper showing, in order to prevent waste, a receiver might be appointed to drill the well and hold the proceeds of the oil to await the outcome of the title suit." *Magnolia Petroleum Co. v. Railroad Commn.*, 141 Tex. 96, 170 S. W. 2d 189 (1943). In Oklahoma the court reached the same result on equitable principles, without reference to any statutory authority. *Marathon Oil Co. v. Western Oil & Drilling Co.*, 185 Okl. 53. 89 P. 2d 939 (1939). We have found no case to the contrary. Since the result reached in the foregoing decisions is manifestly just, we have no hesitancy in adopting that view.

The appellants also question the impartiality of the receiver and the advisability of paying the operators 250% of their costs to develop the well. The appellants, however, have not seen fit to abstract the testimony heard by the chancellor; so we are unable to say that he was mistaken upon issues of fact.

It is also argued that the payment to the operators involves a penalty and is usurious. If the 250% payment was necessary to induce an operator to finance a venture that might prove to be a total loss (and in the absence of an abstract of the proof we must assume that to be the situation), we do not see how it can be said that a penalty is involved. Nor is the charge usurious, for the advancement is not a loan, and the repayment of the operators' expenses depends upon a contingency— the production of oil and gas. See *Reeve v. Ladies' Bldg. Assn.*, 56 Ark. 335, 19 S. W. 917, 18 L. R. A. 129 (1892).

Without reference to the merits of the case, we are impelled by this appellant's statement of the case to remind the members of the bar of our rule requiring the appellant's statement of the case to be short. "This state-

ment, ordinarily not exceeding two pages in length, should be sufficient to enable the court to read the abstract with an understanding of the nature of the case, the general fact situation, and the action taken by the trial court." Rule 9 (b). In the case at bar the appellant's opening statement, comprising eleven printed pages, is actually longer than this opinion. While there is no penalty for an infraction of this particular rule, we do expect appellate advocates to familiarize themselves with our rules and to observe them.

Affirmed.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. The statute cited by the majority only authorizes the appointment of a receiver "on the application of . . . any party *whose right* to or interest in the property or fund or the proceeds thereof, is probable." The appointment of the receiver so far as the record here shows was had upon the pleadings only. Not even a prima facie showing appears in the record. Thus even if the statute be held applicable, the appellees are being given an opportunity to make a profit over and above the actual cost of determining the existence of oil under the leases in question upon only an allegation of title.

Neither does the majority's "right view" result in such great equities. If appellants should win, they will be stuck with a lien in excess of $250,000 on their oil produced from a well that they will not need to recover the oil from under the property.

For the reasons stated I respectfully dissent.