233 P.3d 805 (2010)
2010 OK CIV APP 47
DEUTSCHE BANK NATIONAL TRUST COMPANY, Plaintiff/Appellee,
v.
Sandi A. ROBERTS, Defendant/Appellant, and
Spouse of Sandi A. Roberts, If Married; Tom Herring; New Century Mortgage Corporation; Deutsche Bank National Trust Company Under the Pooling and Services Agreement Dated as of September 1, 2002; Morgan Stanley Dean Witter Capital I Inc. Trust 2002-NC4 by and Through Its Attorney in Fact, Litton Loan Servicing, LP, a Delaware Limited Partnership; John Doe; and Jane Doe, Defendants.
No. 107,491. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 4.
Court of Civil Appeals of Oklahoma, Division No. 4.
March 26, 2010.
*806 Robert J. Bartz, David M. vonHartitzsch, Joe M. Fears, Barber & Bartz, Tulsa, OK, for Plaintiff/Appellee.
James L. Bentley, UAW-GM Legal Services Plan, Del City, OK, for Defendant/Appellant.
DOUG GABBARD II, Presiding Judge.
¶ 1 In this foreclosure action, Defendant, Sandi A. Roberts (Homeowner), appeals the trial court's grant of summary judgment in favor of Plaintiff, Deutsche Bank National Trust Company (Bank). We affirm.

FACTS
¶ 2 Most of the facts are taken from the trial court's six-page journal entry of judgment. In 1988, Homeowner and her husband, Donald Roberts (Husband), bought a home, which is the subject of this action. In 2002, they refinanced their mortgage with a 30-year note in the principal balance of $79,900.
¶ 3 In late 2005, Homeowner and Husband allegedly executed a new 30-year adjustable rate note and a mortgage in favor of First NLC Financial Services, LLC, Bank's predecessor. The note, in the amount of $87,550, was used to pay off the 2002 note and mortgage, plus taxes and other settlement charges. The 2005 note bears only Husband's signature, but the mortgage appears to bear the signatures of both Homeowner and Husband.
¶ 4 Husband died six months after the closing. Shortly thereafter, Bank notified Homeowner that she had fallen behind in her monthly mortgage payments. Bank filed a foreclosure action. Homeowner then satisfied the past due amounts, and Bank dismissed its action.
¶ 5 Homeowner continued making monthly payments through May 2007. In July, she notified Bank that she had learned the note and mortgage had been procured without her consent. She asserts that Husband moved out of the house and began living with another woman the month before the 2005 loan documents were executed, and that someone else impersonated her at the closing, possibly using her driver's license. She asserted that she did not owe the balance of the note and that Bank was obligated to return her payments and release the mortgage.
*807 ¶ 6 Bank responded by notifying her it was accelerating the loan. When she refused to pay, Bank filed the present foreclosure action. Homeowner counterclaimed for a judgment declaring the mortgage void and quieting title to the property in her name. Bank filed a motion for summary judgment, asserting equitable subrogation.
¶ 7 The trial court granted Bank's motion. It found that Homeowner "did not sign, authorize the signing, attend the closing or ratify the 2005 Note or 2005 Mortgage and any signature of hers on any documents associated with the 2005 Note or 2005 Mortgage is a forgery." In a thorough and well-reasoned opinion, the trial court also found that the forged mortgage was void, that Bank should be equitably subrogated to the 2002 mortgage, and, therefore, Bank was entitled to judgment on the note and mortgage in the amount of $79,862.39, plus other charges, including attorney fees. The court also found that Homeowner did not have personal liability on the note.
¶ 8 Homeowner appeals.

STANDARD OF REVIEW
¶ 9 Summary judgment is proper only when it appears that there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law. Jordan v. Jordan, 2006 OK 88, ¶ 17, 151 P.3d 117, 121. We review a grant of summary judgment de novo. Young v. Macy, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. De novo means we give no deference to the trial court's ruling. Fisher v. Fisher, 2007 OK CIV APP 103, ¶ 3, 171 P.3d 917, 919.

ANALYSIS
¶ 10 This might otherwise be an appropriate case for granting a Supreme Court Rule 1.202(d) affirmance by summary opinion, for cases where "no reversible error of law appears and ... the opinion or findings of fact and conclusions of law of the trial court adequately explains the decision." However, because of the novelty of the issues we find that additional discussion is necessary.
¶ 11 The parties agree that the proceeds from the 2005 mortgage satisfied the 2002 mortgage. Thus, if Bank does not receive relief, Homeowner receives the benefits of the void mortgage. The trial court found that equitable subrogation applied, and discussed the concept in the following manner:
28. Equitable subrogation is a principle by which the responsibility for a contractual obligation's discharge should ultimately be placed upon the person that, in good conscience, ought to pay. In re Estate of Macfarline, 2000 OK 87, ¶ 24, 14 P.3d 551, 561; citing Travelers Ins. Companies v. Dickey, 1990 OK 109, 799 P.2d 625.
29. The doctrine is a creation of equity intended to achieve the natural justice of placing the burden of the obligation where it ought to rest. It is not a fixed rule of law; instead, equitable subrogation is pliable and capable of being molded by the Court to attain justice and to compel the ultimate discharge of a debt or obligation by the party who in good conscience should pay. Macfarline, Id. at ¶ 31, 564; citing Republic Underwriters Ins. Co. v. Fire Ins. Exchange, 1982 OK 67, 655 P.2d 544.
30. "[O]ne who makes a loan in innocent reliance upon a forged real estate mortgage is upon the principle of subrogation entitled to subject the land to the repayment to him of such part of the money lent, as was used in taking up existing valid liens." Equitable Life Assur. Soc. of U.S. v. McFadden, 1937 OK 519 [181 Okla. 162] 72 P.2d 795.
¶ 12 Like the instant case, McFadden involved a husband who forged his wife's name on a note and mortgage, with the proceeds from the loan paying off a previous mortgage. The trial court rejected the lender's attempt to foreclose. The Supreme Court reversed, holding that the wife had received the full benefit of the mortgagee's proceeds, and that the doctrine of equitable subrogation applied.
¶ 13 However, Homeowner asserts the present case is distinguishable from McFadden because her property is homestead, and homestead property is given additional protection by Oklahoma's Constitution and statutes.[1] *808 Homeowner relies on Standard Savings & Loan Association v. Acton, 1936 OK 827, 178 Okla. 400, 63 P.2d 15, where the Supreme Court affirmed the trial court's voiding a mortgage on a homestead executed by a wife without her husband's signature. Applying "the express provision of our organic law," the Court quoted a 1914 decision, Whelan v. Adams, 1914 OK 504, 44 Okla. 696, 145 P. 1158, stating, "No alienation of the homestead by the husband alone, in whatever way it may be affected, is of any validity; nothing that he can do or suffer to be done can cast a cloud upon the title; it remains absolutely free from all grants and the incumbrances, except those mentioned in the Constitution." Acton, 1936 OK 827 at ¶ 16, 178 Okla. 400, 63 P.2d at 19.[2]
¶ 14 The homestead concept has always been a part of Oklahoma's culture and history, dating back to the time of the land runs. Its importance is so ingrained in the law that, as early as 1923, the Supreme Court found it "unnecessary to quote" the constitutional and statutory principles. See Nelson v. King, 1923 OK 554, ¶ 3, 92 Okla. 5, 217 P. 360, 362. Recently, the Court reaffirmed the principles that the homestead attaches to the land itself in order to preserve the family home for occupation, and to protect the family from demands of creditors. In re Arnold, 2003 OK 63, ¶¶ 7-8, 73 P.3d 861, 863.
¶ 15 However, just as McFadden does not involve homestead property, Acton and the other cases considering such property do not discuss equitable subrogation. Interestingly, Acton does acknowledge that the homestead protection might not apply if the homeowner committed fraud. Acton, 1936 OK 827 at ¶ 13, 178 Okla. 400, 63 P.2d at 16.[3]
¶ 16 In this case, the parties argue as though homestead protection and equitable subrogation are competing and conflicting concepts. We do not believe the doctrines are inconsistent, and have reached this conclusion by examining the specific protection provided for homestead property by our Constitution. Article 12, section 2 of the Oklahoma Constitution protects the homestead from forced sale for the payment of debts, "except for the purchase money therefor or a part of such purchase money." We relied on this language in deciding Cimarron Federal Savings Association v. Jones, 1991 OK CIV APP 67, 832 P.2d 426 (approved for publication by the Supreme Court). There, a husband and wife argued that a lender's purchase money mortgage was subordinated to the wife's homestead claim, because she had never executed the mortgage. We rejected this argument, stating:

*809 [T]he unambiguous provision of 16 O.S. 1981 § 4[is] to the effect that only a mortgage on a "homestead exempt by law" need be subscribed by both living spouses. Clearly, Art. 12, § 3 of the Oklahoma Constitution and 31 O.S.1981 § 5 subordinate all homestead claims to the holder of a purchase money mortgage. In the present case, Cimarron holds a valid purchase money mortgage interest in the subject "homestead," and [the wife's] homestead claim is not "exempt by law" therefrom; rather, by operation of Art. 12, § 3 and 31 O.S.1981 § 5, Cimarron's purchase money mortgage takes precedence over any homestead claim.
Id. at ¶ 7, 832 P.2d at 428.
¶ 17 Although Cimarron involved a purchase money mortgage and the instant case involves a refinanced mortgage, we do not find this difference dispositive. Section 7.2 of the Restatement (Third) of Property (Mortgages)(1977) defines a purchase money mortgage as "a mortgage given to a vendor of the real estate or to a third party lender to the extent that the proceeds of the loan are used to (1) acquire title to the real estate; or (2) construct improvements [thereon] if the mortgage is given as part of the same transaction in which title is acquired." The Restatement then states that a "new" mortgage that releases and replaces a senior mortgage retains, with a few exceptions, the same priority. Id. at § 7.3. The refinanced mortgage in this case was an exchange for the old mortgage; it covered the homestead and it paid off the unpaid portion of the old mortgage with no excess. Applying Cimarron, we find that Bank holds a valid purchase money mortgage, that Homeowner's homestead claim is not "exempt by law," and that equitable subrogation is the appropriate remedy.
¶ 18 These conclusions are supported by two Oklahoma decisions that condition equitable subrogation on the interests taken in the subsequent mortgages. In Southwest Title & Trust Co. v. Norman Lumber Co., 1968 OK 71, 441 P.2d 430, the Supreme Court refused to apply subrogation because the new lender had failed to prove "any agreement that the first mortgage indebtedness would be satisfied in that manner [with proceeds from the new loan], or that the new lender believed in good faith that its security would be substituted of record for the one released and cancelled." Id. at ¶ 0, 441 P.2d at 431 (syllabus of the court # 1). On the other hand, our Court applied equitable subrogation in Mortgage Electronic Registration Systems, Inc. v. U.S., 2006 OK CIV APP 45, ¶ 20, 134 P.3d 913, 917, noting:
In the present case, Lender made an agreement with Borrowers to provide a refinance loan in return for the 2001 mortgage's priority position on the property. This is evidenced by the fact the loan was used to pay off all known encumbrances, and was for approximately the same amount. Also, Borrowers requested the loan for the purpose of refinancing at a lower interest rate and paying off the 2001 mortgage. Therefore, a trier of fact could find Lender did not voluntarily lend Borrowers money. Because Lender advanced the loan on a defective security for the purpose of paying off the 2001 mortgage, expecting to get good security, it is eligible for subrogation to the 2001 lien in the absence of intervening equities.
¶ 19 Indisputably, the loan that Husband received was exactly the amount necessary to pay off the 2002 note and mortgage, the costs of taxes, and various settlement charges. In fact, attached to Bank's motion for summary judgment as Exhibit "I" is a copy of the check for almost the full amount of the loan, with a notation that it was to "Payoff first mortgage." As in Mortgage Electronic, Bank satisfied the doctrinal requirement of an agreement that the new mortgage's proceeds be used to pay off the old note and mortgage.[4] Thus, the trial court properly applied subrogation.

*810 CONCLUSION
¶ 20 Accordingly, the trial court's summary judgment is hereby affirmed.
¶ 21 AFFIRMED.
GOODMAN, J., concurs, and RAPP, J., not participating.
NOTES
[1] Okla. Const. art. 12 § 2, provides:

The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; Provided, Nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage.
Title 16 O.S.2001 § 4(A) provides in relevant part:
No deed, mortgage, or contract affecting the homestead exempt by law, except a lease for a period not exceeding one (1) year, shall be valid unless in writing and subscribed by both husband and wife, if both are living and not divorced, or legally separated, except as otherwise provided for by law.
[2] The Court in Acton rejected an allegation, similar to one made in the instant case, that the husband had ratified the mortgage by accepting the proceeds: "One cannot ratify or adopt a contract that does not purport, at least remotely, to be in his behalf.... The mere fact that he subsequently accepted and used in his business some of the money derived by his wife from the loan, cannot, in our opinion, serve to dispense, with the necessity of his signature, upon any theory of ratification or adoption." 1936 OK 827 at ¶¶ 11-12, 178 Okla. 400, 63 P.2d at 17-18. The Court noted the trial court had granted a personal judgment against the wife.
[3] Cases from other jurisdictions often turn on similar specific facts about which party has knowledge of what conduct. Two recent Bankruptcy Court decisions illustrate this. In both, a spouse's signature was forged. Equitable subrogation was allowed in a Kansas case, where the spouse whose signature was forged had knowledge of and consented to a refinancing. In re Cox, 408 B.R. 407 (Bkrtcy.D.Kan.2009). Another court reached the opposite result, concluding the lender had acted recklessly and its representative must have known about the forgery. In re Holmes, 403 B.R. 634 (Bkrtcy.D.Minn.2009).
[4] This result promotes the policy that "the doctrine of equitable subrogation works to protect homestead property. Without equitable subrogation, lenders would be hesitant to refinance homestead property due to increased risk that they might be forced to forfeit their liens. The ability to refinance provides homeowners the flexibility to rearrange debt and avoid foreclosure." LaSalle Bank Nat'l Assoc. v. White, 246 S.W.3d 616, 620 (Tex.2007).