The Guardian Life Insurance Company of America v. Nils Swanson et al.
Frank J. Jaros, Appellee, v. The Guardian Life Insurance Company of America, Appellant.

Gen. No. 38,503.

.Opinion filed July 3, 1936. Rehearing denied July 14, 1936.

VERNON R. LOUCKS and A. J. HENNINGS, both of Chicago, for appellant.

HAROLD A. FEIN, of Chicago, for appellee.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

Frank J. Jaros (hereinafter referred to as the petitioner) filed his intervening petition in proceedings brought by the Guardian Life Insurance Company of America, plaintiff, to foreclose a first mortgage trust deed covering certain improved real estate located at Montrose and Winchester avenues, Chicago. The petition alleged that Jaros is the owner and holder of a note executed by Fred Knapp and Helen Knapp, his wife, in the sum of $2,484, which was secured by a chattel mortgage to one Marie J. Banach conveying 20 electric refrigerators located in the premises sought to be foreclosed, and asked that an order be entered either directing delivery to him of said electric refrig-

erators or payment to him of the fair and reasonable value thereof.

Plaintiff filed an answer alleging that the refrigerators were ''a part and parcel of the real estate'' covered by its trust deed and denying that the petitioner had any right to the possession of said refrigerators or any title to same. The answer of the receiver of the property averred that the refrigerators were part of the real estate.

The order which this appeal seeks to reverse, after finding that the refrigerators in dispute were at no time affixed to or made a part of the building, that they were personal property and that they did not constitute ''a part or parcel of the real estate,'' decreed that Jaros is entitled to the possession of same.

Plaintiff contends that it was the intention of the parties at the time the electric refrigerators were installed that they should be and become part and parcel of the real estate; that, therefore, they are part of the real estate covered by the trust deed in question; and that, even if such refrigerators were intended to be personal property, the petitioner, Jaros, has shown no title or right to possession whatever in this case.

The petitioner's theory is that the refrigerators were personal property at the time of their installation in the building and retained ''such characteristic''; that plaintiff did not raise as an issue nor disprove the validity of the chattel mortgage under which petitioner claims the right of possession; that plaintiff is estopped from claiming that the refrigerators became fixtures and part of the real estate; and that plaintiff, prior to the submission of this matter to the trial court, acknowledged that the electric refrigerators retained their character as personal property.

Nils Swanson was the owner of the premises in question on January 22, 1930, when he and his wife exe-

cuted and delivered their trust deed on this property to secure the payment of the first mortgage loan of $101,500 from plaintiff, the negotiations for which were conducted exclusively by Elmer E. Stultz, a realtor, for the owner and by Roy L. Nelson of the Cosmopolitan State Bank for the Guardian Life Insurance Company. Stultz testified that when Nelson came to his office during the negotiations for the loan, he inquired as to Swanson's attitude as to the installation of electric refrigerators; that he (Stultz) replied: "We contemplate and will put in ice boxes as they are demanded. We don't want to be forced to put ice boxes in one hundred per cent as maybe some tenants will be satisfied with the ice boxes, but we will put them in according to your requirements"; that electric refrigerators were shortly thereafter installed by Swanson for the renting season as they were needed and demanded in renting the premises, complete installation taking place before the end of the year; and that, while the matter of electric refrigeration was in a more or less experimental stage in 1930, it became a vital factor in renting premises of the character involved even in that year, and is compulsory at the present time to secure desirable tenants for that particular class of property.

It does not appear to whom or when Nils Swanson and his wife conveyed their equity in this property, but it does appear that when they sold the property the electric refrigerators installed by Swanson in 1930 were not transferred separately by bill of sale as personal property to the purchaser of the real estate but were included in the conveyance of the premises by deed.

The record includes a copy of a contract for the exchange of properties, executed September 22, 1933, by one John W. Hudson, beneficiary under a trust held by Phillips State Bank and Trust Company and Fred

Knapp and Helen Knapp, his wife, under the terms of which Hudson agreed to exchange the property in question "including 20 electric refrigerators, all fully paid for" to the Knapps for Wisconsin farm land. On November 15, 1933, Fred Knapp and Helen Knapp executed the note and chattel mortgage covering the 20 refrigerators involved to one Marie J. Banach.

The major question presented for our determination is whether the 20 electric refrigerators installed in this building are to be treated as permanent fixtures and part of the real estate or personal property, the possession of which petitioner is entitled to under his chattel mortgage. Each refrigerator, weighing about 262 pounds, stood on its own legs and was unattached to the building except by an electric cord plugged into a wall socket. That the refrigerators are readily removable without injury to the building or to themselves is conceded.

While it is true that parties may not by contract make personal property real or personal at will, it has been generally held that such property as refrigerators may, upon installation, be classified as chattels personal or as chattels real, according to the intention. In *Commercial Credit Corp. v. Gould,* 275 Mass. 48, the court said at p. 52: "This refrigerating equipment, installed as found by the judge, which could 'be easily removed from the building without any damage whatever to it' was not real estate as matter of law, but rather was property, the nature of which depended upon the intention of the landowner as manifested by his acts."

The established rule in this and most other jurisdictions is that in determining whether articles of personal property installed in or annexed to a building are to be treated as fixtures and part of the real estate or as movable personal property, the primary test is the intention of the parties at the time of the trans-

action and installation, and that proof of adaptability and necessity merely bears upon the question of intention. (*Thuma v. Granada Hotel Co.*, 269 Ill. App. 484.)

The petitioner is not in the position of a vendor under a conditional sales contract who has not been paid the purchase price of the articles installed. Nor is he in the position of a chattel mortgagee who received his mortgage from the landowner to secure the purchase price of articles installed or annexed to the building. As against either a prior or subsequent mortgagee of the real estate, both the conditional vendor and holder of the purchase money chattel mortgage have been uniformly held entitled to the possession of the articles sold and not paid for by the owner of the property if they could be removed without any considerable damage. The chattel mortgage under which petitioner claims in this case was not executed until about three years after the refrigerators were purchased, installed and paid for. While prior to and at the time of the execution of his trust deed January 22, 1930, to secure his loan from plaintiff, Swanson refused to agree to install the electric refrigerators at a definite time, he did express an intention to do so as and when it became necessary. He did install them in most of the apartments shortly thereafter during the renting season and completely equipped the building with them before the end of that year, paying for them out of the income from the property. That he considered them fixtures and part of the real estate is attested by the fact that he included them in his deed of the premises to his grantee.

The subsequent chain of title is not disclosed by the record, but petitioner himself introduced in evidence a copy of a contract heretofore referred to for the exchange of this property, in which the grantor named therein agreed to convey the premises, "including 20

electric refrigerators, fully paid for.'' It was several months after the date of this contract that the grantees named therein executed petitioner's chattel mortgage.

In our opinion the actual or presumed intention of the Knapps in executing and delivering the chattel mortgage and of the chattel mortgagee in accepting same as security for the note signed by the Knapps should be accorded little weight in determining whether the refrigerators partake of the character of real or personal property. We think that necessity impelled Swanson to purchase and install the refrigerators to secure a desirable class of tenants for his apartments who would pay adequate and probably increased rentals, and that his intention is clearly and conclusively shown by the evidence to have been to annex the same as fixtures. It is a matter of common knowledge that electric refrigeration is economically essential in a comparatively modern building of the type in question and that apartments without such equipment are not readily rentable to tenants of the class for which such a building is designed. It is obvious that Swanson's purpose in installing the refrigerators was to permanently increase the value of the building for occupancy by tenants of the individual apartments. When these refrigerators were installed and paid for by Swanson, no one other than he had any title or claim to them, and it has been held that the real estate mortgagee is entitled to the security of any annexation made by his mortgagor of his own property. (Campbell v. Roddy, 44 N. J. Eq. 244.)

In Fifield v. Farmers' Nat. Bank, 148 Ill. 163, where certain machines purchased for use in the manufacture of shoes were placed in a shoe factory with the intention that they should remain therein as part of the plant, the court said at pp. 169, 170, 171–172:

''Ewell on Fixtures states the rule for determining what are to be regarded as fixtures, as follows: 'First,

real or constructive annexation of the thing in question to the realty; second, appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; third, the intention of the party making the annexation to make it a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made.' The author also says: 'Of these tests the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention.'

" . . .

"The same doctrine was declared in *Pierce v. George,* 108 Mass. 78. It is there said: 'Articles placed in a mill by the owner to carry out the obvious purpose for which it was erected, and adapted to that purpose, are generally part of the realty, notwithstanding the fact that they could be removed and used elsewhere.' The same rule has been adopted in Maine: *Parsons v. Copeland,* 38 Me. 537. So in Iowa: *Ottumwa Woolen Mill Co. v. Howey,* 44 Iowa, 57. Michigan adopts the same rule: *Togle v. Palmer,* 42 Mich. 314. See, also, *Taylor v. Collins,* 51 Wis. 123, and *Dudly v. Hunt,* 67 Md. 44, where the same doctrine is declared.

"In *Hill v. Farmers' Nat. Bank,* 97 U. S. 450, the question arose whether machinery in a paper mill was part of the realty and in deciding the case the court, among other things, said: 'By placing it in the building, in constructing the mill, every part and parcel of it, as between mortgagor and mortgagee, became a fixture, and a part of the freehold.'

"*Sword v. Low,* 122 Ill. 487, has been cited, and is relied upon by the appellants. In the case cited an engine and boiler attached to the realty were held to be personal property. But upon an examination of the case it will be found that it was agreed between the vendor and purchaser, when the engine and boiler were sold, that the purchaser should execute and deliver a chattel mortgage on the property to secure the payment of the purchase money."

In *Thomsen v. Cullen,* 196 Wis. 581, where the question arose between the mortgagor and the mortgagee as to whether movable flasks necessary to the process of casting contained in a building built for use as a foundry but unattached in any manner to the premises, constituted fixtures, the court said at pp. 598, 599, 600, 601–603:

"Questions of what fixtures pass as real estate arise principally in the following situations: (1st) between vendor and vendee; (2d) mortgagor and mortgagee; (3rd) landlord and tenant; (4th) owner of life estate and remainderman; (5th) seller under a conditional sales contract as against mortgagee and subsequent vendees and prior mortgagees; (6th) with reference to taxation. Generally speaking the rule is very liberal with respect to the rights of mortgagees and vendees. . . . It is probable that no branch of the law is in greater confusion than the law of fixtures. Confusion is due in some degree at least to a failure to classify the cases. There is a constant tendency to carry over decisions in one classification and to apply them to cases in other classifications, ignoring the difference in the legal relation of the parties.

"The rule was laid down in *Gunderson v. Swarthout,* 104 Wis. 186, 80 N. W. 465, where the question arose between a conditional vendor and a purchaser at a foreclosure sale as follows: 'The test for determining whether articles of machinery are fixtures is: (1)

Actual physical annexation to the realty; (2) application or adaptation to the use or purpose to which the realty is devoted; (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold.' . . . 'Where the machinery attached is adapted to the purpose to which the realty is devoted, and is for the permanent use and improvement of the freehold, it is a fixture and a part of the realty; but where it is attached for a mere temporary use, with the present intention of removal, it continues to be personal property.'

"The doctrine of the *Gunderson Case* was reaffirmed in *State ex rel. Gisholt Machine Co. v. Norsman,* 168 Wis. 442, 169 N. W. 429, a carefully considered case where the question arose as to taxation and the rule that is applicable as between vendor and vendee was applied. After reviewing the Wisconsin decisions the court said: . . . 'It is true that the question of whether property constitutes fixtures is largely one of intent. But where property is adapted to the use to which the realty is devoted the use thereof in such manner furnishes such strong evidence of intent to make it a part of the freehold as not to be overcome by bookkeeping practices.' (Citing cases.)

"The annexation referred to may be either (a) actual or (b) constructive. A chattel is said to be constructively annexed when it is a necessary indispensable integral part of the plant with which it is connected.

". . .

"A careful review of the cases leads one irresistibly to the conclusion that in recent cases greater weight is given to intention and use than to the matter of mere physical attachment. . . .

"Very slight incidents, such as connection by an electric wire, by a leather belt, or other slight physical annexation which might be severed without injury

either to the personalty or the realty, are seized upon by many courts as a basis for holding the fixture a part of the realty. It is considered that a rule based upon such slight circumstances is not well grounded. It is considered that what makes a fixture attached by a belt or wire or pipe a part of the realty is the use to which it is put rather than the mere physical attachment. If it is a necessary integral part of the plant, as between mortgagor and mortgagee it is considered realty. A different rule prevails in many instances as between landlord and tenant. As already pointed out in the present case the flasks are an integral indispensable element in the operation of a foundry; they are made upon the premises, designed to be used there when and as needed, and in accordance with the great weight of authority it must be held that the flasks along with the other articles described were a part of the realty and passed to the first mortgagee and that the trial court correctly so held.''

It is clearly apparent that at the time the first mortgage on the real estate was arranged for and the trust deed given that Swanson and plaintiff intended that such electric refrigerators as were installed would, as permanent accessions to the building, become a part of the security for the first mortgage loan, and it is equally clear that Swanson and his successor owner or owners prior to the Knapps treated the refrigerators as part and parcel of the real estate.

Electric refrigerators are now recognized as just as essential equipment as gas or electric ranges in modern apartment buildings, and if the owner of such a building which was incumbered with a first mortgage had paid for and installed electric refrigerators in all the apartments of same 10 years ago, and during said 10 years the refrigerators were included in conveyances of the real estate by a succession of owners who treated them as fixtures and an integral part of the premises,

it surely would be inequitable to sanction or permit the sale or mortgage of them as personal property by the next succeeding owner to the detriment of the security of the real estate mortgagee. The foregoing factual situation is comparable to that presented in this cause and we are of the opinion that the court erred in finding that the refrigerators constituted personal property and decreeing that petitioner is entitled to their possession under his chattel mortgage.

Petitioner claims that plaintiff in an unexecuted document drawn by one of its attorneys stated that the refrigerators were personal property, that the Knapps were the owners of and had title to same and that therefore it is now estopped from asserting any claim to the contrary. Without reciting the circumstances under which the instrument was drawn, it is sufficient to state that in no event could it be considered as other than an offer to compromise certain matters in dispute, and as an offer of compromise it has no proper place in the record.

Other points have been urged and considered, but in the view we take of this cause we deem it unnecessary to discuss them.

For the reasons stated herein the order or decree of the circuit court is reversed and the cause remanded with directions to dismiss the intervening petition for want of equity.

*Reversed and remanded with directions.*

FRIEND and SCANLAN, JJ., concur.