The Merchants and Mechanics Federal Savings Loan Association brought proceedings to foreclose a real estate mortgage given by Alonzo R. and Evelyn Herald, *Page 116 
and the mortgaged premises, upon which stood a dwelling house, were sold at sheriff's sale to The Taggart Coal and Supply Company, a lien claimant.
Alonzo R. Herald, d. b. a. A. R. Herald, was the builder and general contractor in the erection of the house. He purchased from the L. C. Gaier Furniture Company 120 square yards of carpeting and padding and installed it wall to wall. The furniture company received from Herald a note and chattel mortgage which were assigned to the defendant-appellant, The First National Bank of Springfield, Ohio, and the mortgage was duly filed. In the foreclosure suit the bank filed a cross-petition seeking foreclosure of its chattel mortgage. Taggart, the purchaser of the premises, filed a motion for summary judgment, which was submitted upon an agreed stipulation of facts. The court sustained the motion and entered judgment against the bank on its cross-petition. The judgment entry contained a finding that the carpeting and padding were fixtures and part of the real estate.
The stipulation of fact was as follows:
"Counsel for the respective parties do hereby agree that the motion for summary judgment filed by the Taggart Coal and Supply Co. against the cross petition of the First National Bank of Springfield, Ohio, will be submitted to this court on the following written stipulation of fact, and on written briefs that counsel may file.
"Alonzo R. Herald and Evelyn Herald acquired the fee ownership of certain real estate known as Lot No. 57, Rolling Fields Estates, Addition No. 3, by deed filed May 8, 1961. Thereafter, Alonzo R. Herald, dba A. R. Herald, Builder, as a general contractor, commenced the construction of a residence house with attached garage on said real estate and substantially completed the same with the installation of 120 square yards of carpeting and padding as wall to wall carpeting in said house.
"On August 29, 1961, A. R. Herald purchased said 120 square yards of carpeting and padding from L. C. Gaier Furniture Co. and executed his note and chattel mortgage to said furniture company. Said chattel mortgage describes the chattel property as `120 square yards carpeting and padding' and *Page 117 
further provides that said property `will be located at 1543 Briarwood Terrace, Springfield, Ohio,' which address is the real estate involved in this case. Said note and chattel mortgage were assigned to the First National Bank of Springfield, Ohio, and was recorded August 30, 1961 with the Recorder of Clark County, Ohio, as a chattel mortgage.
"The following procedure was used in the construction of the flooring in said house and the installation of said carpeting and padding: The sub flooring consisted of plywood which became a finished floor upon the installation of said carpeting and padding, extending from wall to wall. Without said carpeting and padding, the floors were not finished. The carpeting and padding were first cut to fit the rooms in the house. Then a piece of lath, called smooth edge, about one-inch wide is nailed around the perimeter of the floors, with nails driven down into the sub flooring. The smooth edge has nails, about 20 to the running foot, with the sharp points protruding up and angled towards the wall. The padding is then installed by stapling through the padding into the plywood floor. The edge of the padding being placed flush with the edge of the smooth edge. Then the carpeting is placed flush to one wall and affixed over the angled nails protruding from the smooth edge. The carpeting is then stretched by a mechanical stretcher and in a stretched position affixed on the angled nails from the smooth edge along the opposite wall.
"The carpeting may be removed by first stretching the carpet with the mechanical stretcher, then pulling the carpeting free from the nails protruding from the smooth edge. Such a removal would not damage the carpeting. To remove the padding would require the removal of the staples from the sub flooring. The padding might be damaged by such removal. After the removal of the carpeting, the sub flooring and smooth edge would be essentially in the same condition as existed prior to the installation of the carpeting and padding.
"It was always the intention of A. R. Herald that the wall to wall carpeting be purchased from the furniture company and installed in said house would become part of the house and be sold as part of the house when the house was sold. The L. C. Gaier Furniture Co., at the time of the sale and execution of *Page 118 
the chattel mortgage, intended that said carpeting and padding should remain as chattel property although it knew, at the time of said sale, that said carpeting and padding would be cut to fit the rooms in the new house that A. R. Herald was building, that said house was located at 1543 Briarwood Terrace and was being built for sale, and that said carpeting and padding would be installed as wall to wall carpeting and sold as part of the house."
The purchase of the real estate at the sheriff's sale by defendant-appellee, The Taggart Coal and Supply Company, who was a lien claimant, is recited in the statement of the case contained in appellant's brief; this statement is accepted by the Taggart Coal and Supply Company.
There is nothing in the record to show that Taggart, the purchaser, had actual notice of appellant's mortgage.
It is our opinion that the principles enunciated in the case of Holland Furnace Co. v. Trumbull Savings Loan Co. (1939),135 Ohio St. 48, are dispositive of this case. While there is some variation in the facts, the same reasoning will apply.
The tests for determining whether a chattel has become a fixture are set forth in the second paragraph of the syllabus of that case as follows:
"A fixture is to be determined by the consideration of a combination of the following tests: (1) To become a fixture it is essential that the chattel in question be annexed to some extent to realty. (2) The chattel must have an appropriate application to the use or purpose to which the realty to which it is attached is devoted. (3) There must be an actual or apparent intention upon the part of the owner of the chattel in affixing it to realty to make such chattel a permanent part of such realty. (Teaff v. Hewitt, 1 Ohio St. 511, approved and followed.)"
We proceed to apply these tests in their numerical order to the facts in the present case.
(1) Concerning annexation of a chattel to real estate, the court said in the course of its opinion, "The annexation may be very slight." In that case a furnace was involved. It was attached to the warm-air registers or pipes of the house with metallic sleeves or sections of pipe. In our case the attachment of the padding with staples to the floor and of the carpeting by *Page 119 
being mechanically stretched and engaged with the smoothing strips, appears to us to be comparable.
(2) It is doubtful that the carpeting and padding were as vital to the habitability of this house as was the furnace to that in the case cited. Nevertheless, these items "have an appropriate application to the use or purpose to which the realty to which it is [they are] attached is devoted," and much of the following language of the Supreme Court pertaining to the furnace is generally applicable here:
"When installed, it certainly became an integral and necessary part of the whole premises and ordinarily it would not be taken out or dismantled until it was worn out by use. If the owner of the realty had become the owner of the furnace it certainly would have passed with the realty as a part of it in any transfer or sale of the premises. In this respect it would be different from a heating stove whose function would be to heat any single room of the house. The adaptation of the chattel, in this case the furnace, to the permanent use and enjoyment of the freehold; the lack of utility of the premises if it were severed and the necessity of replacing it with another or similar kind if it were removed, all indicate that the second test of a fixture is satisfied in the case of this furnace." Holland Furnace Co. v. Trumbull Savings Loan Co.,135 Ohio St. 48, at page 53.
(3) The intent of the owner to make these chattels part of the realty, to be sold with it, is apparent and consistent throughout except for his execution of the chattel mortgage. However, in almost all such controversies, including theHolland Furnace case, the owner has executed a chattel mortgage or conditional sales agreement, else the question would not arise. Hence, this circumstance is not determinative. The property is a chattel or chattels when the mortgage is executed. Its annexation to the real estate is subsequent.
The appellant in its cross-petition alleged the basis of its claim and therefore undertook the burden of proof. We cannot say that the court was wrong in concluding that it had failed to show that the property remained chattels.
This decision of the Supreme Court also disposes of the only other important question in the case: Whether the purchaser *Page 120 
was charged with notice of the chattel mortgage which had been made a matter of public record. As already noted, there is nothing to show that it had actual notice. The Holland Furnacecase holds that in such a situation the chattel mortgage, filed as such, and apparently containing no legal description of the real estate and no reference thereto except as to the location of the chattel property, does not constitute notice to a purchaser of the real estate.
On the other hand, the appellant had full knowledge of the facts.
Another furnace case which follows the same general principles as the Holland Furnace case is the XXth CenturyHeating Ventilating Co. v. Home Owners' Loan Corp., 56 Ohio App. 188.
As between the chattel mortgagor and chattel mortgagee, we would have an entirely different question. But in the case of a bona fide purchaser of the real estate without actual notice of the chattel mortgage, the purchaser will prevail against the fully informed chattel mortgagee.
The judgment is affirmed.
Judgment affirmed.
KERNS, P. J., and SHERER, J., concur. *Page 121