EXCHANGE LEASING CORP., APPELLEE, *v.* FINSTER N. AEGEN, INC.;
THE UNION SAVINGS ASSN., APPELLANT.

[Cite as Exchange Leasing Corp. v. Finster N. Aegen, Inc.,
7 Ohio App. 2d 11.]

12

*Messrs. Terrell, Williams & Salim,* for appellee.
*Messrs. Walter, Haverfield, Buescher & Chockley,* for appellant.

SKEEL, J. This appeal comes to this court on questions of law from a judgment entered for the plaintiff after trial by the court without the intervention of a jury in the Court of Common Pleas of Cuyahoga County. The action is in replevin seeking to recover possession of about sixty-five hundred yards of carpet installed in defendant's, Finster N. Aegen, Inc., apartment building located on East 88th Street, Garfield Heights, Ohio. From such judgment the new defendant, Union Savings Association, claims the following errors:

1. That the judgment is contrary to law.
2. That such judgment is against the manifest weight of the evidence.

The new party defendant, Union Savings Association, the appellant herein, and the plaintiff, by stipulation, agree to the following facts:

In July 1963, the defendant Finster N. Aegen, Inc., filed an application with the Union Savings Association for a construction loan to build an apartment building at 5150 East 88th Street. In connection with such proposal, plans, specifications, estimated cost breakdown and projected income statement were submitted to Union Savings. Before the loan was approved, the proposed construction of buildings containing three hundred sixty-eight suites was modified and reduced to provide for a building containing one hundred and twelve suites, and, as thus proposed, Union Savings authorized a construction loan of $1,050,000. This loan, when accepted by Union Savings, was evidenced by a note secured by mortgage, such mortgage being recorded on August 15, 1963. It was decided that garages for each of the one hundred and twelve suites would not be constructed, and the

loan was reduced to $981,900, with a withholding of $69,000 of the proceeds of the morgtage for the construction of such garages at a future date.

Prior to April 1964, Aegen purchased 6,457 2/3 yards of carpet from Regal Carpeting Company, all of which was installed in the several suites of defendant's apartment building on East 88th Street as such suites were completed and rented. The stipulation provides that all the suites were substantially completed and rented by September 1964.

The construction of this apartment building was such that the floors were concrete with a thin layer of rough plywood covering the exposed surface of the concrete. The carpet was installed by Aegen by the use of grippers nailed to the rough plywood floor along the walls of each room and the carpet stretched over the protruding nails of the grippers after the carpet had been first cut to room size. A padding was stapled to the plywood before the carpet was laid.

It is further agreed by the stipulations that in August 1964 (the day of the month not being stated, as is equally true of the lease agreement introduced as an exhibit) the plaintiff leased all the carpet to Finster N. Aegen, Inc. (the face amount: $32,896.17; the lease showing that Aegen, Inc., was to pay $1,108.60 monthly rental for a period of three years, in the total amount of $39,909.60). Even though the lease was executed sometime in August, the defendant Aegen did not attempt to sell the carpet to the plaintiff until September 25, 1964, the sale price being $32,896.17. The stipulations show that Aegen gave plaintiff additional security on the leased carpet by giving plaintiff a financial statement which was filed in the office of the County Recorder of Cuyahoga County on October 16, 1964. The exhibit intending to be a copy of such statement is unreadable and, for that reason, will be completely disregarded. The record also shows an attempt to assign the rents coming due from the tenants to meet the carpet rental.

The local representative of the plaintiff was R. C. I. Leasing, Inc., whose president was vice president of Temple Realty Corp., which company sold Aegen the property on East 88th Street. The vice president was called as a witness for the plaintiff, who, in part, testified:

"Q. Was Temple Realty Company associated in any way,

with Finster N. Aegen, Inc.? A. Yes, Temple Realty Company for some time preceding the date of this lease [of the carpet] was involved as a broker selling property to Finster N. Aegen, and also to other companies that these people own.

"Q. Did it act as a rental agent for Finster N. Aegen respecting this particular apartment? A. Yes, we acted as the initial rental agents. That is, we opened the building when it was—when the model suites were completed. We maintained the advertising, oversaw the advertising, and did the initial renting of the building."

It is, therefore, clearly evident that the plaintiff was fully advised of the circumstances under which the carpeting was installed in the one hundred and twelve suites of Aegen's apartment building. In further support of this fact, the stipulations and other evidence presented clearly show that it was the purpose of Aegen to furnish carpeting as a permanent part of each of the suites to which each tenant was entitled, that is to provide a suitable and proper floor covering..

In the estimated cost breakdown filed by Aegen with Union Savings in presenting its request for a construction loan, an item for carpeting was included as a construction cost. Also, in the mortgage given to secure the construction loan to Union Savings, carpeting is declared to be a part of the building and considered as a part of the security for the loan.

It must also be noted that the underpadding was fitted and stapled to the rough plywood floor surface, which in all reasonable probability made it impossible to be removed without its complete destruction. As indicated, the carpeting was also cut to room size and affixed firmly over the plywood to provide a finished floor to be used by each tenant as a permanent part of his suite to which he was entitled as a necessary facility of such suite.

These facts show conclusively that Aegen intended that the carpet should become a part of the realty whereby, when fixed to the floor, it lost its identity as personalty and became a part of the realty.

All these circumstances were well known to the plaintiff through its agent and exclusive Ohio representative, R. C. I. Leasing, Inc., and its president. So the plaintiff's claim that the transaction whereby plaintiff leased carpet to Aegen, which

defendant Aegen had previously purchased from a carpet dealer and installed as a part of the construction costs of its apartment building, was not, as claimed by the plaintiff, an "arms length" transaction.

The law of Ohio on the subject of fixtures is stated in *Teaff* v. *Hewitt*, 1 Ohio St. 511, 59 Am. Dec. 634, where the court set out the following requisites as determining the question of when personalty loses its character as such and becomes a part of the realty when used in connection therewith:

"1st. Actual annexation to the realty, or something appurtenant thereto. 2d. Application to the use, or purpose, to which that part of the realty with which it is connected, is appropriated. 3d. The intention of the party making the annexation, to make a permenant accession to the freehold."

The carpeting as used satisfies all three of these criteria. As required by No. 1, the carpet and padding, after being cut to size, was firmly fixed to the rough plywood, which was necessary to afford tenants a liveable finished floor. It was clearly (as required by No. 2) appropriated to a necessary use of the property to which it was attached, and (No. 3) the circumstances were such as to show an intent to create a finished suite, as is necessary to make the several suites inhabitable for the use of tenants who otherwise would not be attracted to the apartment as a place of abode.

In the case of *Doll* v. *Guthrie*, 233 Ky. 77, 24 S. W. 2d 947, the court had for consideration whether or not "in-a-door" beds installed in an apartment building passed to the plaintiff grantee as part of the land. Brown on Personal Property (1936), at page 634, quoting the Kentucky case (*Doll*), says:

" 'Were these beds physically annexed to the apartment by the slightest physical connection, there would be but scarce room for argument that they were not fixtures. There would be present the physical annexation, the adaptation to use with that part of the realty to which they were annexed, and there would be present the intention to make them permanent accessions to the realty. Actually there is present in this case the two latter elements, and there is only lacking the tenuous physical connection of the assumed case. There can be no doubt that these "in-a-door" beds were by the vendor at the time he erected these efficiency apartments and equipped them with

these beds, dedicated to the realty. It was the intention that they should be part of the equipment of the realty.' "

The law of fixtures has not changed materially since the development of the rule, that a chattel closely associated with and dedicated to the use of land when so intended was to be treated as a part of the land, was determined, at a very early date. The law of the case of *Teaff* v. *Hewitt* has been almost universally recognized. However, the kind of property subject to the rule has developed materially as new methods in the use of materials in construction or manufacturing enterprises, decorative desires and personal requirements have advanced to meet the needs of a changing industrial civilization. The change from the rule that the degree of annexation was the deciding factor to the cases that now hold that the intention of the parties, express or implied, is to be considered as a primary factor is illustrated by the case of *Guardian Life Ins. Co.* v. *Swanson*, 286 Ill. App. 278, 3 N. E. 2d 324, where the second paragraph of the syllabus provides:

"While parties may not by contract make personal property real or personal at will, generally such property as refrigerators may, upon installation, be classified as chattels personal or chattels real according to parties' intention."

The carpet cases which hold that carpet when tacked to the floor does not without more become a part of the realty are cases where the owner of the property seeks to and claims a tenant's carpet where the tenant installed such carpeting for his own use and enjoyment. This is quite different from the facts in the case at bar, where the owner of an apartment building installed carpeting as a permanent facility for the use of the tenants of each suite.

It is a matter of public knowledge that newly constructed apartment buildings of this day are built with concrete floors, making the structure fireproof. To make the suites desirable, the floors must be tiled or fully carpeted, which is now being done in many cases by the owner prior to the suites being rented or leased by a tenant. The rent is, in part, paid in compensation for the use of the carpet or other finished floor covering as a facility of the suite. A situation whereby the owner-landlord of an apartment building induces tenants to rent or lease suites in such apartment building by installing carpet over

the unfinished floors, as just stated, to make the suites more presentable to prospective tenants and, as shown by the stipulations, the carpeting being designated as a part of construction costs and included in the description of the property to be subject to the lien of the construction mortgage, shows clearly that Aegen and Union intended that such carpet be considered a part of the building, that is, a fixture in each suite.

Aegen, therefore, could not, by an attempt to sell the carpet (after it had been affixed to the realty as intended) to the plaintiff who was fully advised of the facts about its installation vest any interest in plaintiff, or could plaintiff be vested with any interest in such carpeting by the attempted sale to it superior to that of Union or the tenants who are not parties to this action. The lease executed by the plaintiff to Aegen, which was executed before the sale, could not vest a right to the carpet in the plaintiff, and, upon default by Aegen in paying the stipulated rent, the plaintiff could not maintain an action in replevin to take possession of the carpet under the terms of a chattel mortgage describing the carpet executed by Aegen as security for the payment of the claimed purchase price in the attempted sale of the carpet. See *Merchants & Mechanics Fed. Sav. & Loan Assn.* v. *Herald,* 120 Ohio App. 115.

The judgment is, therefore, reversed as contrary to law, and, since there is no dispute as to the facts, final judgment is entered for the defendant The Union Savings Association.

*Judgment reversed.*

WASSERMAN, P. J., and SILBERT, J., concur.