**SOUTHWEST TITLE & TRUST CO., Inc.,**
**a corporation, Plaintiff in Error,**

v.

**NORMAN LUMBER COMPANY, a corporation, and CAP Interiors, Inc., a corporation, Defendants in Error.**

**No. 42590.**

Supreme Court of Oklahoma.

May 14, 1968.

George A. Fisher, of Hanson, Fisher, Tumilty, Peterson & Tompkins, Oklahoma City, for plaintiff in error.

W. Samuel Dykeman, Oklahoma City, for defendant in error, CAP Interiors Inc.

Fielding D. Haas, Ben Benedum, T. R. Benedum, Norman, for defendant in error, Norman Lumber Co.

BLACKBIRD, Justice.

This appeal involves an action on a promissory note and to foreclose a real estate mortgage to secure its payment, covering residential property at 217 Sherwood, in Moore, Oklahoma. The prospective builder of the residence, Executive Homes of Norman, Inc., procured a so-called "construction loan" of $15,800.00 from Security National Bank & Trust Co., of Norman, Oklahoma. The money derived through this loan constituted the building fund for paying the cost of the residence's construction. To secure the loan repayment, Executive Homes of Norman executed and delivered to said Bank a real estate mortgage on the property, that was filed of record in March, 1965.

Thereafter, on April 4, 1965, Executive Homes entered into an oral contract with the defendant in error, Norman Lumber Company, hereinafter referred to merely as "Lumber Company", to furnish certain materials for use in the construction of said residence. Pursuant to said contract, Lumber Company started furnishing said materials on April 6, 1965, and continued to do so through July 17, 1965.

On or about June 8, 1965, Executive Homes entered into a contract with the defendant in error, CAP Interiors, hereinafter referred to merely as "CAP", to furnish certain labor and materials, including the installing of certain floor coverings in the new residence. The first of these materials was furnished the same date.

Thereafter, Executive Homes sold the new residence to a Mr. and Mrs. Charles M. Ermey. To make the purchase, Mr. and Mrs. Ermey negotiated a twenty-one-thousand-dollar loan from Oklahoma Mortgage Company. The Ermeys' obligation to repay said loan was evidenced by the promissory note for that principal amount, dated June 21, 1965, which they signed and delivered to said Mortgage Company, promising to repay it at the rate of $116.13 per month. The note's payment was secured by a real estate mortgage, dated the same date, which the Ermeys executed and delivered to said Mortgage Company. This mortgage was guaranteed by a "Mortgage Guaranty Policy", issued to Oklahoma Mortgage Company by plaintiff in error, hereinafter referred to as "plaintiff". Part of the proceeds of this loan, to the extent of $16,034.74, was used in paying off Executive Homes' above mentioned construction loan from Security National Bank & Trust Company. Said Bank thereafter released its above mentioned real estate mortgage of record on June 23, 1965.

Executive Homes failed to pay Lumber Company and CAP for the materials they had furnished, as aforesaid; and, in September, 1965, those suppliers, hereinafter referred to collectively as "materialmen", filed separate materialmen's liens for the debts, thus incurred, in the principal amounts of $2934.18 and $920.26, respectively, plus interest and attorney's fees.

The Ermeys failed to pay the September, 1965, monthly installment on their loan from Oklahoma Mortgage Company, and thereafter continued to default on payments subsequently due thereon.

In January, 1966, said Mortgage Company assigned its real estate mortgage on the property to plaintiff; and plaintiff instituted the present action approximately a month later.

In the action, the Materialmen, Lumber Company and CAP, asserted their above mentioned claims against the property and sought foreclosure of their above mentioned materialmen's liens in appropriate pleadings of intervention.

At the trial, it was stipulated, among other things, in substance, that the lien Norman's Security National Bank & Trust Company had obtained on the property (through its mortgage securing repayment of the above mentioned construction loan), was the first lien that ever attached itself to the property, and it had been prior to all others.

In the judgment the trial court thereafter entered in said action during March, 1967, it held that the materialmen's liens of Lumber Company and CAP were prior and superior to the real estate mortgage lien plaintiff had obtained on the property through the above mentioned assignment from Oklahoma Mortgage Company; and judgment was entered accordingly.

After the overruling of its motion for a new trial, plaintiff perfected the present appeal.

Plaintiff urges there is error in the trial court's judgment in two respects. Under one proposition, it argues that said court erred in impressing the realty with a lien in CAP's favor on account of its furnishing materials, which plaintiff says were personal property and never became a part of the realty. Under another proposition, plaintiff argues, in substance, that the court erred in not treating it as "subrogated in equity" to the aforementioned stipulated priority of Security National Bank & Trust Company's original construction loan mortgage, to the extent of the part of said mortgage indebtedness in the amount of $16,034.74 which was paid out of the twenty-one-thousand-dollar loan fund Oklahoma Mortgage Company, plaintiff's assignor made available to the Ermeys for use in purchasing the property.

Materialmen concede that in "closing the loan" it made to the Ermeys, Oklahoma Mortgage Company transmitted to Security National Bank & Trust Company (out of the proceeds of said loan), the $16,034.74 then due on said Bank's previous construction loan to Executive Homes, in order to clear the property's title of the encumbrance of said Bank's mortgage; but they assert, in essence, that, as far as the record shows, said Mortgage Company volunteered to do this, at a time when it had no interest in the property and therefore had nothing to protect, nor any obligation, or compulsion, by agreement, or otherwise, either to make a loan on the property, or to pay off the previous one made by said Bank to Executive Homes. They infer

that if Oklahoma Mortgage Company had desired subrogation to the rights of the Norman Bank—the original mortgagee—it should have taken an assignment of said Bank's mortgage on the property, in connection with the satisfaction of the indebtedness, whose payment was secured by it. In this connection, see Tit. 42 O.S. 1961, § 19. To support their argument that the doctrine of equitable subrogation cannot be invoked by plaintiff, they cite Citizens State Bank of Tulsa v. Pittsburg County Broadcasting Co., (Okl.) 271 P.2d 725, in which this Court reviewed some of its previous decisions on the subject, and quoted from Owen v. Interstate Mortgage Trust Co., 88 Okl. 10, 211 P. 87, 30 A.L.R. 816, as follows:

"One who, having no interest to protect, voluntarily loans money to mortgagor for the purpose of satisfying and cancelling a prior mortgage, taking a new mortgage for his own security, cannot have the former mortgage revived and himself subrogated to the rights of the mortgagee thereon where he has failed to take an assignment of the prior mortgage, and has voluntarily paid and discharged the same of record."

In this connection, notice also our quotations in that case from Bobier v. Horn, 95 Okl. 8, 222 P. 238 and Tynes v. Smith, Sheriff, 105 Okl. 100, 234 P. 637. See also 50 Am.Jur., "Subrogation", secs. 94–97, and 107–109, all inclusive.

Its counsel seem to recognize that the cases above referred to are obstacles to plaintiff's position in this case, but it urges that under the "believing in good faith" rule enunciated in the third paragraph of the syllabus in Mid-Continent Life Ins. Co. v. Goforth, 193 Okl. 314, 143 P.2d 154, and the first paragraph of the syllabus in Home Owners Loan Corporation v. Parker, 181 Okl. 234, 73 P.2d 170, its position should prevail. We do not agree. In the Goforth Case, the fact that the plaintiff procured an assignment of the principal mortgage and the commission mortgage theretofore held by Oklahoma Farm Mort-

gage Company, when it paid the latter the amount owing to it, was clear proof in itself, that it believed in good faith, that its security would be substituted of record for that discharged; but here we have no such proof. It is true that the "LOAN CLOSING STATEMENT" dated June 21, 1965, apparently used by Oklahoma Mortgage Company in closing its loan with the Ermeys, and introduced into the evidence at the trial as "Defendant's Exhibit I", showed the Norman Bank had a mortgage on the property and indicated that the amount due on the indebtedness thereby secured, as well as the cost of filing and recording a release of said mortgage, would be deducted from the proceeds of the loan, said Mortgage Company was making the Ermeys. But, the trial court's judgment, in effect, negates any conclusion that this document constituted sufficient basis for applying the doctrine of equitable subrogation. Under the rule (see the quotation from 25 R.C.L. 1340 in the Parker Case, supra) it is only when "from all the facts and circumstances surrounding the transaction *it is clearly* to be implied that it was the intention of the parties that the person making the advance was to have security of equal dignity and position with that discharged " * * * (that) equity will so decree." Evidently, the trial court saw no clear implication, solely from the Lien Closing Statement, that Oklahoma Mortgage Company was to have a mortgage, or other security, "of equal dignity and position with" the Norman Bank's mortgage, when Executive Homes' debt to the Bank was discharged. Without any other evidence to support such an implication, or to establish that the Ermeys requested Oklahoma Mortgage Company to pay off the mortgage indebtedness then due Security National Bank & Trust Company, we do not think there is even as much justification for decreeing subrogation here, as existed in the Citizens State Bank of Tulsa, supra. Accordingly, we cannot say the trial court's judgment, as to that feature of the case, is contrary to law, or to the evidence, or an abuse of discretion by a court

of equity. In that respect, it will therefore be upheld.

As to the issue of whether the debt for materials and labor furnished by CAP during Executive Homes' completion of the house, and readying the property for sale as a residence, could constitute the basis for a lien against the property, that could be perfected and impressed upon it under our Mechanics and Materialmen's Lien Statute, Tit. 42 O.S.1961, § 141, the written "Stipulation Of Facts" entered into at the trial shows that the parties thereby agreed that CAP "has a valid, subsisting Materialman's Lien" against the property in the amount of $348.03, of the total sum of $920.26, which latter was the amount of the lien the trial court decreed in CAP's favor. We also observe, from said stipulation, that the remainder of said total sum, namely: $572.23, "represented the value of the carpet, carpet pad and labor used in the installation of the same." It would thus appear that the only part of CAP's total adjudged lien, that is now in controversy, is this $572.23.

In attempting to obtain a decision reversing the trial court's adjudication of said materialman's lien in CAP's favor, on account of the carpeting it installed, plaintiff, under its Proposition II, cites the insurance company cases of Hartford Fire Insurance Co. v. Balch, Okl., 350 P.2d 514, and Gray v. Prudential Insurance Company of America, 182 Okl. 324, 77 P.2d 563, in support of its position.

On the other hand, CAP quotes the above mentioned stipulation of facts, indicating that the residence was planned and constructed, without any "finish", or top, flooring, and that the carpeting involved was installed, instead of such flooring— being laid on concrete subflooring downstairs and rough unfinished plywood flooring upstairs. The stipulation also described, in rather minute detail, the manner in which the carpeting was installed, showing that in each of the residence's rooms (with the probable exception of the kitchen and bathroom, and perhaps one other

room) the carpeting was attached, after the under padding was laid, to tack strips around the edges of the room—being stretched across the room by power stretchers—and that the carpet pad, or under padding, could not be removed, after it was installed, without destroying it as a useable product. CAP contends that, by the manner in which the carpeting was laid, it was not only "annexed" to the realty, as a "fixture," within the meaning of that term as defined in Tit. 60 O.S.1961, § 7, but that it was also "material for the erection * * *" of a "building, improvement, or structure * * *" on a "tract or piece of land * * *" under § 141, supra; and that the cases cited by plaintiff are distinguishable from the present one.

We recognize that the same tests have been used in judicial determinations about the lienability of materials, that have been used in determining whether such articles are "fixtures" (see 36 Am.Jur., "Mechanics Liens", §§ 77 and 78, and 22 Am.Jur., "Fixtures", § 54); but, as said in the 1967 Cumulative Supplement to 22 Am.Jur., "Fixtures", § 54, p. 770 at footnote 4.5: "The authorities are conflicting as to whether floor coverings retain their quality of personal property when put into place in buildings." The truth of that statement is evidenced by the cases discussed in the annotation (cited opposite that footnote) appearing in 55 A.L.R.2d, beginning at page 1044, and on pages 505 and 506 of the A. L.R.2d, Later Cases Service supplement for Volumes 49–55 A.L.R.2d. Thus, in Cox v. State Farm Fire & Casualty Co., 240 Ark. 60, 398 S.W.2d 60, 17 A.L.R.3d 1376, the Supreme Court of Arkansas affirmed a trial court judgment to the effect that wall-to-wall carpeting, laid over a hardwood, or "finish" floor, with patches of unfinished boards in it, was "unscheduled, personal property," rather than a "fixture", or part of the dwelling covered by the fire insurance policy there involved. And, in Maas Brothers, Inc. v. Guaranty Federal Sav. & L. Ass'n, (Fla.App.) 157 So.2d 528, the court arrived at a similar conclusion concerning wall-to-wall carpeting attached, by the tackless method, to unfinished flooring. But, in Merchants & Mechanics Fed. Sav. & Loan Ass'n v. Herald, 120 Ohio App. 115, 201 N.E.2d 237, wall-to-wall carpeting, laid in all material respects like the carpeting was shown, by the above mentioned stipulation, to have been laid in this case, was held to have become a part of the realty, under the criteria for "fixtures".

■ It is our conclusion, after a study of the authorities, and the record in this case, that the trial court was correct in upholding CAP's claimed materialman's lien. Here, the carpeting was intended, and was installed over what might be called "subflooring", to take the place of the wooden, "finish", flooring that ordinarily, or usually in former times, covered the sub-flooring of houses. Surely, no one would deny that finish, wooden, flooring, installed to complete a new dwelling, becomes an integral part of its construction, and must be considered annexed to the realty, as much as any other basic building material used in its construction, and necessary, under modern standards, to its completion as a finished liveable, dwelling house, or residence. In this connection, notice Exchange Leasing Corp. v. Finster N. Aegen, Inc., 7 Ohio App.2d 11, 218 N.E.2d 633, 637.

(The transaction here involved occurred after the effective date of this State's Uniform Commercial Code, Tit. 12A, Sec. 2–101 to 10–104, both inclusive; and it is anticipated that many questions, more or less directly related to the issues in this case, will arise under said Act's operation—notice 15 Am.Jur.2d, "Commercial Code", §§ 68–70, both incl., and the discussion in 64 Columbia Law Review 44, "Fixtures Under The Uniform Commercial Code"; but, since the parties to this appeal made no reference to this Act at the trial, nor in their briefs, our opinion in this case should not be considered as controlling in future cases specifically brought under said Act).

In accord with the foregoing, the judgment of the trial court is hereby affirmed.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, BERRY, HODGES, LAVENDER and McINERNEY, JJ., concur.